**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CATCH 26, LLC, an Illinois Limited Liability
Company, GAS CAP FUELS, LLC, an Illinois
Limited Liability Company and GRAYSLAKE
STOP & SHOP, LLC, an Illinois Limited Liability
Company,

Plaintiffs,

Index No.: 1:17-cv-06135

- against -

LGP REALTY HOLDINGS, LP, a Delaware Limited
Partnership, as successor by assignment from
PT, LLC, BAPA, LLC and State Oil Company and
LEHIGH GAS WHOLESALE, LLC, a Delaware
Limited Liability Company,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LGP REALTY HOLDINGS LP, LEHIGH GAS
WHOLESALE LLC, LEHIGH GAS WHOLESALE
SERVICES, INC. AND CROSSAMERICA
PARTNERS LP,

Third-Party Plaintiffs,

- against -

CATCH 26, LLC, GAS CAP FUELS, LLC,
GRAYSLAKE STOP & SHOP, LLC, LOUAY ALANI
and ALI ALANI,

Third-Party Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

<u>**ANSWER WITH COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**</u>

Defendants LGP Realty Holdings, LP, as successor by assignment from PT, LLC, BAPA,

LLC and State Oil Company, and Lehigh Gas Wholesale, LLC (collectively "Defendants" or

"Lehigh"), by and through their attorneys, Sorling Northrup and Harriton & Furrer, LLP,

answering Plaintiffs Catch 26, LLC ("Catch 26"), Gas Cap Fuels, LLC ("Gas Cap") and

Grayslake Stop & Shop, LLC's ("Grayslake Stop & Shop") Complaint, state as follows:

**The Parties**

1.       Lehigh admits that Catch 26 operates a motor fuel sales facility (the "Woodstock

Facility") at 401 S. Eastwood Drive, Woodstock, Illinois 60098 (the "Woodstock Property"), and

admits that Catch 26 has a principal place of business in the State of Illinois. Lehigh lacks

sufficient knowledge as to whether Catch 26 is an Illinois limited liability company with a

principal place of business in Woodstock, McHenry County, Illinois and denies the remainder of

the allegations in Paragraph "1."  In addition, Lehigh respectfully refers all questions of law to

this Honorable Court.

2.       Lehigh admits that Gas Cap operates a motor fuel sales facility (the "Ingleside

Facility") at 26025 W. Grand Avenue, Ingleside, Illinois 60041 (the "Ingleside Property") and

admits that Gas Cap has a principal place of business in the State of Illinois. Lehigh lacks

sufficient knowledge as to whether Gas Cap is an Illinois limited liability company with a

principal place of business in Ingleside, Lake County, Illinois and denies the remainder of the

allegations in Paragraph "2."  In addition, Lehigh respectfully refers all questions of law to this

Honorable Court.

3.       Lehigh admits that Grayslake Stop & Shop operates a motor fuel sales facility

(the "Grayslake Facility") at 735 E. Belvidere road, Grayslake, Illinois 60030 (the "Grayslake

Property") and admits that Grayslake Stop & Shop has a principal place of business in the State

of Illinois. Lehigh lacks sufficient knowledge as to whether Grayslake Stop & Shop is an Illinois

limited liability company with a principal place of business in Grayslake, Lake County, Illinois

and denies the remainder of the allegations in Paragraph "3."  In addition, Lehigh respectfully

refers all questions of law to this Honorable Court.

4.      Lehigh admits that Defendant LGP Realty Holdings LP ("LGP") is a Delaware limited partnership with its principal place of business in Allentown, Pennsylvania but denies the remainder of the allegations in Paragraph "4." In addition, Lehigh respectfully refers all questions of law to this Honorable Court.

5.      Lehigh admits that Defendant Lehigh Gas Wholesale, LLC ("LGW") is a Delaware limited partnership with its principal place of business in Allentown, Pennsylvania but denies the remainder of the allegations in Paragraph "5."  In addition, Lehigh respectfully refers all questions of law to this Honorable Court.

## Jurisdiction and Venue

6.      The allegations in Paragraph "6" involve issues of law as to which no response is necessary and Lehigh respectfully refers all questions of law to this Honorable Court.  To the extent a responsive pleading is required, the allegations of Paragraph "6" are denied.

7.      The allegations in Paragraph "7" involve issues of law as to which no response is necessary and Lehigh respectfully refers all questions of law to this Honorable Court.  To the extent a responsive pleading is required, the allegations of Paragraph "7" are denied.

## Background Facts

8.      Lehigh denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph "8" and, as such, leaves Plaintiffs to their proof.

9.      Lehigh admits that Catch 26 entered into a Lease with BAPA, LLC, PT, LLC and State Oil Company on or about October 22, 2014 for the Catch 26 Facility and on or about October 22, 2014 Catch 26 and State Oil Company entered into a Petroleum Products Supply Agreement, but denies the remainder of the allegations in Paragraph "9."

10.     Lehigh admits that on or about April 13, 2013, Gas Cap, Louay Alani and Catch 26, entered into an Installment Agreement for Warranty Deed and Personal Property (the "Installment Agreement") with BAPA, LLC, PT, LLC and State Oil Company regarding the Gas Cap Facility but denies the remainder of the allegations in Paragraph "10."

11.     Lehigh denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph "11" and, as such, leaves Plaintiffs to their proof.

12.     Lehigh admits that on or about October 22, 2014, Grayslake entered into a Lease with BAPA, LLC, PT, LLC and State Oil Company for the Grayslake Facility and on or about October 22, 2014, Grayslake entered into a Petroleum Products Supply Agreement with State Oil Company regarding the Grayslake Facility but denies the remainder of the allegations in Paragraph "12."

13.     Lehigh denies the allegations contained in Paragraph "13" as the allegations asserted relate to a writing that speaks for itself.

14.     Lehigh admits only that, effective September 27, 2016, State Oil Company's rights and obligations under the Grayslake and Woodstock Leases, Supply Agreements and Security Agreements and the Ingleside Security Agreement, Supply Agreement and Promissory Note were assigned to Lehigh Gas Wholesale LLC, LGP Realty Holdings LP or LGP Realty's subsidiaries and Lehigh Gas Wholesale Services, Inc., each of which were affiliates of CrossAmerica Partners LP and denies the remainder of the allegations in Paragraph "14.".

15.     Lehigh admits only that it used escrow funds to pay real estate taxes for the Grayslake and Woodstock Properties but denies the remainder of the allegations contained in Paragraph "15."

16.     Lehigh admits only that, on August 14, 2017, it sent a termination letter to Catch

4

26, Gas Cap and Grayslake Stop & Shop. The Termination Letter was also delivered by hand to the recipients. Lehigh denies the remainder of the allegations contained in Paragraph "16" as the allegations asserted relate to a writing that speaks for itself.

## COUNT I
## Violation of the PMPA
## Termination of Franchise Relationship Without Just Cause

17. Lehigh realleges and incorporates by reference its responses to Paragraphs "1" through "16" above as if fully recited herein.

18. Lehigh denies each and every allegation set forth in Paragraph "18" in the form alleged and respectfully refers all questions of law to this Honorable Court.

19. Lehigh denies each and every allegation set forth in Paragraph "19" in the form alleged and respectfully refers all questions of law to this Honorable Court.

20. Lehigh denies each and every allegation set forth in Paragraph "20" in the form alleged and respectfully refers all questions of law to this Honorable Court.

21. Lehigh denies each and every allegation set forth in Paragraph "21" in the form alleged and respectfully refers all questions of law to this Honorable Court.

22. Lehigh admits only that, on August 14, 2017, it sent a termination letter to Catch 26, Gas Cap and Grayslake. Lehigh denies each and every other allegation set forth in Paragraph "22."

23. Lehigh admits only that, on August 14, 2017, it sent a termination letter to Catch 26, Gas Cap and Grayslake. Lehigh denies each and every other allegation set forth in Paragraph "23."

24. Lehigh admits only that, on August 14, 2017, it sent a termination letter to Catch 26, Gas Cap and Grayslake Stop & Shop. Lehigh denies each and every other allegation set

forth in Paragraph "24."

25.     Lehigh denies each any every allegation set forth in Paragraph "25."

26.     Lehigh denies each and every allegation set forth in Paragraph "26."

27.     Lehigh denies each and every allegation set forth in Paragraph "27."

28.     Lehigh denies each and every allegation set forth in Paragraph "28."

**COUNT II**
**Breach of Contract**

29.     Lehigh realleges and incorporates by reference its responses to Paragraphs "1" through "16" above as if fully recited herein.

30.     Lehigh denies the allegations contained in Paragraph "30" as the allegations asserted relate to a writing that speaks for itself.

31.     Lehigh denies each and every allegation set forth in Paragraph "31."

32.     Lehigh denies each and every allegation set forth in Paragraph "32."

33.     Lehigh denies each and every allegation set forth in Paragraph "33."

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense**

Plaintiffs' Complaint should be dismissed as it fails to state a claim upon which relief may be granted.

**Second Affirmative Defense**

Plaintiffs are barred from recovery because their alleged damages were caused by the acts or omissions of some other third party, over whom Lehigh exercised no control and for whose conduct Lehigh bears no responsibility.

**Third Affirmative Defense**

Plaintiffs' claims are barred by reason of the statute of limitations.

### Fourth Affirmative Defense

Lehigh's actions were in good faith, in accordance with the applicable contractual agreements by and between the parties and permitted by applicable laws and regulations.

### Fifth Affirmative Defense

Each of Plaintiffs' claims is barred, in whole or in part, by the doctrines of laches, waiver, estoppel and/or unclean hands.

### Sixth Affirmative Defense

Plaintiffs failed to exercise reasonable measures to mitigate their damages and, in fact, failed to mitigate their damages, if any.

### Seventh Affirmative Defense

To the extent, if any, that Plaintiffs have sustained damages, such damages might have been, and were not, avoided by Plaintiffs by reasonable effort without undue risk or expense.

### Eighth Affirmative Defense

The injuries and damages, if any, allegedly sustained by Plaintiffs were caused or contributed to, in whole or in part, by culpable conduct, including contributory negligence, want of care and/or assumption of risk attributable to Plaintiffs, without any fault or negligence on the part of Lehigh, its agents, employees or entities with whom Lehigh had a contractual relationship, contributing thereto. By reason of the foregoing, the amount of damages otherwise recoverable by Plaintiffs against Lehigh should be diminished in proportion to such culpable conduct attributable to Plaintiffs.

### Ninth Affirmative Defense

Plaintiffs' claims are barred by the terms and conditions of the contractual agreements by and between the parties.

**Tenth Affirmative Defense**

This Court does not have subject matter jurisdiction over all of Plaintiffs' claims.

**Eleventh Affirmative Defense**

Not all of the pertinent agreements are governed by the Petroleum Marketing Practices Act.

**WHEREFORE**, Defendants respectfully request that this Honorable Court enter a judgment in their favor:

a.      Dismissing the Complaint and each and every cause of action therein;

b.      Awarding Defendants' attorneys' fees;

c.      Awarding Defendants' interest and cost of the suit; and,

d.      Granting Defendants such other and further relief as the Court deems just and proper.

**COUNTERCLAIMS**

Defendants LGP Realty Holdings, LP, as successor by assignment from PT, LLC, BAPA, LLC and State Oil Company, and Lehigh Gas Wholesale, LLC (collectively "Defendants" or "Lehigh"), by and through their attorneys, Sorling Northrup and Harriton & Furrer, LLP, for their Counterclaims against Plaintiffs Catch 26, LLC ("Catch 26"), Gas Cap Fuels, LLC ("Gas Cap") and Grayslake Stop & Shop, LLC's ("Grayslake Stop & Shop"), allege and state as follows:

I.      **The Parties and Their Relationships**

1.      LGP Realty Holdings LP ("LGP Realty") is a Delaware limited partnership with its principal place of business in the Commonwealth of Pennsylvania.

2.      Lehigh Gas Wholesale LLC ("LGW") is a Delaware limited liability company

8

with its principal place of business in the Commonwealth of Pennsylvania.

3.      Lehigh Gas Wholesale Services, Inc. ("LGW Services") is a Delaware corporation with its principal place of business in the Commonwealth of Pennsylvania.

4.      CrossAmerica Partners LP ("CAP") is a Delaware limited partnership with its principal place of business in the Commonwealth of Pennsylvania.

5.      Catch 26, LLC ("Catch 26") is an Illinois limited liability company with its principal place of business in the State of Illinois.

6.      Gas Cap Fuels, LLC ("Gas Cap") is an Illinois limited liability company with its principal place of business in the State of Illinois.

7.      Grayslake Stop & Shop, LLC ("Grayslake Stop & Shop") is an Illinois limited liability company with its principal place of business in the State of Illinois.

8.      Louay Alani is an individual who, upon information and belief, resides in the State of Illinois.

9.      Ali Alani is an individual who, upon information and belief, resides in the State of Illinois.

10.     LGP Realty, LGW, LGW Services and CAP, through their various affiliate entities, (collectively referred to herein as "Lehigh") are engaged in the marketing and distribution of petroleum products in the State of Illinois and certain other states.

**A.      The Ingleside Property**

11.     On or about April 12, 2013, PT, L.L.C. and BAPA, L.L.C. entered into an Installment Agreement for Warranty Deed and Personal Property with Gas Cap and Louay Alani related to the property located at 26025 West Grand Avenue, Ingleside, Illinois 60041 ("Ingleside Property") ("Ingleside Installment Agreement"). See generally Ingleside Installment Agreement

(Exhibit A).

12.     Pursuant to the terms of the Ingleside Installment Agreement, Gas Cap agreed to purchase the Ingleside Property for $445,000.00 plus the cost of the then-gasoline inventory.

13.     An initial payment of $44,500.00 was due at the Initial Closing on April 12, 2013 and the remainder due was evidenced by a Promissory Note ("Ingleside Promissory Note") to be paid in full by April 1, 2020, at which time, if all conditions had been met, the Ingleside Property would have been conveyed to Gas Cap at the Final Closing.   See Ingleside Installment Agreement, pp.1-2, Section 2.  See also Ingleside Promissory Note (Exhibit B).

14.     Between the Initial Closing and the Final Closing, Gas Cap was granted possession of the Ingleside Property.  See Ingleside Installment Agreement, Section 3.

15.     On or about April 12, 2013, Catch 26 entered into a Petroleum Products Supply Agreement with State Oil wherein Catch 26 agreed to purchase all petroleum products to be sold at the Ingleside Property from State Oil ("Ingleside Supply Agreement").   See generally Ingleside Supply Agreement (Exhibit C).

16.     Louay Alani is the sole Manager for Catch 26.  See Office of the Illinois Secretary of State, LLC Managers for Catch 26 Form (Exhibit D).

17.     The term of the Ingleside Supply Agreement was intended to parallel the term of the Ingleside Installment Agreement in that the Ingleside Supply Agreement commenced on the date Gas Cap took possession of the Ingleside Property and was for an initial term of eight (8) years.  See Ingleside Supply Agreement, Section 8.

18.     Louay Alani and Ali Alani personally guaranteed the Ingleside Installment Agreement and Supply Agreement ("Ingleside Guaranty").  See Ingleside Guaranties (Exhibit E).

10

19.     The Ingleside Property is a branded gasoline station, which means that the only gasoline that can be sold at the station is Marathon Petroleum Corp. ("Marathon") branded gasoline station.

20.     The Ingleside Supply Agreement is governed by the Petroleum Marketing Practices Act ("PMPA").

**B.     The Grayslake Facility**

21.     On or about October 22, 2014 PT, L.L.C. and BAPA, L.L.C. also entered into a Lease wherein PT, L.L.C. and BAPA, L.L.C. leased the property located at 735 Belvidere Road, Grayslake, Illinois 60030 ("Grayslake Property") to Grayslake Stop & Shop for the purpose of operating a gasoline station ("Grayslake Lease").  See generally Grayslake Lease (Exhibit F).

22.     Louay Alani is the sole Manager for Grayslake Stop & Shop.    See Office of the Illinois Secretary of State, LLC Managers for Grayslake Stop & Shop Form (Exhibit G).

23.     The term of the Grayslake Lease was from October 24, 2014 to October 31, 2017. See Grayslake Lease, Section 1.2.

24.     On or about October 22, 2014, Grayslake Stop & Shop entered into a Petroleum Products Supply Agreement with State Oil wherein Grayslake Stop & Shop agreed to purchase all petroleum products to be sold at the Grayslake Property from State Oil ("Grayslake Supply Agreement").  See generally Grayslake Supply Agreement (Exhibit H).

25.     The term of the Grayslake Supply Agreement was intended to parallel the term of the Grayslake Lease.  See Grayslake Supply Agreement, Section 8.

26.     Grayslake Stop & Shop entered into a Security Agreement, also on October 22, 2014, in which it granted to State Oil a security interest in Grayslake Stop & Shop's account receivables, equipment, inventory, fixtures, documents, chattel paper, instruments, intangibles

11

and the proceeds and products thereof ("Grayslake Security Agreement"). <u>See</u> <u>generally</u> Grayslake Security Agreement (Exhibit I).

27. Louay Alani and Ali Alani personally guaranteed Grayslake Stop & Shop's obligations under the Grayslake Lease and Supply Agreement ("Grayslake Guaranty"). <u>See</u> Grayslake Guaranty (Exhibit J).

28. The Grayslake Property is an unbranded gasoline station, which means that any brand of gasoline can be sold at the station as long as it is supplied by Lehigh.

29. The Grayslake Supply Agreement is not governed by the PMPA.

**C. The Woodstock Facility**

30. On or about October 22, 2014 PT, L.L.C. and BAPA, L.L.C. also entered into a Lease wherein PT, L.L.C. and BAPA, L.L.C. leased the property located at 401 S. Eastwood, Woodstock, Illinois 60098 ("Woodstock Property") to Catch 26 for the purpose of operating a gasoline station ("Woodstock Lease"). <u>See</u> <u>generally</u> Woodstock Lease (Exhibit K).

31. Catch 26 is the same entity that entered into the Ingleside Supply Agreement and Louay Alani is the sole manager for the limited liability company. The term of the Woodstock Lease was from October 24, 2014 to October 31, 2017. <u>See</u> Woodstock Lease, Section 1.2.

32. On or about October 22, 2014, Catch 26 entered into a Petroleum Products Supply Agreement with State Oil wherein Catch 26 agreed to purchase all petroleum products to be sold at the Woodstock Property from State Oil ("Woodstock Supply Agreement"). <u>See</u> <u>generally</u> Woodstock Supply Agreement (Exhibit L).

33. The term of the Woodstock Supply Agreement was intended to parallel the term of the Woodstock Lease. <u>See</u> Woodstock Supply Agreement, Section 8.

34. Catch 26 entered into a Security Agreement, also on October 22, 2014, in which it

granted to State Oil a security interest in Catch 26's account receivables, equipment, inventory, fixtures, documents chattel paper, instruments, intangibles and the proceeds and products thereof ("Woodstock Security Agreement"). <u>See generally</u> Woodstock Security Agreement (Exhibit M).

35.    Louay Alani and Ali Alani personally guaranteed Catch 26's obligations under the Woodstock Lease and Supply Agreement ("Woodstock Guaranty"). <u>See</u> Woodstock Guaranty (Exhibit N).

36.    The Woodstock Property is an unbranded gasoline station, which means that any brand of gasoline can be sold at the station as long as it is supplied by Lehigh.

37.    The Woodstock Supply Agreement is not governed by the PMPA.

**D.    The Assignments**

38.    Effective September 27, 2016, State Oil's rights and obligations under the Grayslake and Woodstock Leases, Supply Agreements and Security Agreements and the Ingleside Security Agreement, Supply Agreement and Promissory Note were assigned to LGW, LGP Realty or LGP Realty's subsidiaries and LGW Services, each of which were affiliates of CAP.

39.    Notices of the assignments were provided to Catch 26, Gas Cap and Grayslake on or about August 17, 2016. <u>See</u> Grayslake Notice of Assignment (Exhibit O); Woodstock Notice of Assignment (Exhibit P); and Ingleside Notice of Assignment (Exhibit Q).

40.    At or about the same time, in September 2016, BAPA, L.L.C. and PT, L.L.C. conveyed the Ingleside Property to LGP Realty. <u>See</u> Ingleside Special Warranty Deed (Exhibit R).

**II.    The Dispute**

41.    On July 5, 2017, Catch 26 had an open balance for rent and other related charges

13

with respect to the Woodstock Property of $6,564.80, which included: (1) Stenstrom Petroleum Sales & Services in the amount of $2,125.00 for repairs at the Property for which Catch 26 was responsible (charged June 9, 2017); (2) rent in the amount of $2,000.00 (charged July 1, 2017); and (3) estimated real estate taxes in the amount of $2,439.80 (charged July 1, 2017).

42.     On July 5, 2017, Catch 26's pre-authorized account was debited for the then-outstanding balance in the amount of $6,564.80; however, there were insufficient funds to satisfy the draft, the draft was returned and, as a result, the Woodstock property was placed on hold.

43.     Catch 26 never remitted funds to satisfy the open balance at the Woodstock Property.

44.     Shortly thereafter, Catch 26 started purchasing petroleum product from one or more suppliers at the Woodstock Property in breach of the Woodstock Supply Agreement and, upon information and belief, continues to do so until the present time.

45.     In addition, with respect to the Woodstock Property, on or about August 9, 2017, Lehigh learned that Catch 26 had changed its banking information with Petroleum Card Services ("PCS") so that credit card payments would no longer go directly to Lehigh in breach of the Woodstock Supply Agreement and, as a result, Lehigh stopped receiving credit card credits.

46.     With respect to the Ingleside Property, on August 5, 2017, Catch 26 had an open balance for rent and other related charges of $17,208.90, which included: (1) Excel invoice for EMV Equipment in the amount of $11,051.70 (charged June 30, 2017); (2) real estate taxes in the amount of $1,353.13 (charged August 1, 2017); and (3) monthly payment required under the Ingleside Installment Agreement in the amount of $4,804.07 (charged August 1, 2017).

47.     On August 5, 2017, Catch 26's pre-authorized account was debited for the then-outstanding balance for the Ingleside Property in the amount of $17,208.90; however, there were

14

insufficient funds to satisfy the draft, the draft bounced and, as a result, on or about August 10, 2017, Catch 26's Ingleside account was placed on hold.  See August 10, 2017 Email (Exhibit S).

48.     Catch 26 never remitted funds to satisfy the open balance at the Ingleside Property.

49.     Shortly thereafter, Catch 26 started purchasing petroleum product from one or more suppliers at the Ingleside Property in breach of the Ingleside Supply Agreement and, upon information and belief, continues to do so until the present time.

50.     With respect to the Grayslake Property, on August 4, 2017, Grayslake Stop & Shop had an open balance for motor fuel receivables totaling $40,562.44.

51.     On August 4, 2017, Grayslake Stop & Shop's pre-authorized account was debited in the amount of $33,736.24; however, there were insufficient funds to satisfy the draft, the draft bounced and, as a result, Grayslake Stop & Shop's Grayslake account was placed on hold on or about August 8, 2017.

52.     Grayslake Stop & Shop never remitted funds to satisfy the open balance at the Grayslake Property.

53.     Shortly thereafter, Grayslake Stop & Shop started purchasing petroleum product from one or more suppliers at the Grayslake Property in breach of the Grayslake Supply Agreement and, upon information and belief, continues to do so until the present time.

54.     In addition, with respect to the Grayslake Property, on or about August 9, 2017, Lehigh learned that Grayslake Stop & Shop had changed its banking information with PCS so that credit card payments would no longer go directly to Lehigh in breach of the Grayslake Supply Agreement and, as a result, Lehigh stopped receiving credit card credits.

55.     Based on the foregoing, on August 14, 2017, Alani, Gas Cap, Catch 26 and

Grayslake Stop & Shop (Gas Cap, Catch 26 and Grayslake Stop & Shop are collectively "Alani's Operating Entities") were provided due notice that the Ingleside, Woodstock and Grayslake Supply Agreements as well as the Woodstock and Grayslake Leases and the Ingleside Installment Agreement were all terminated.

56.     The August 14, 2017 Notice of Termination was served by hand delivery as well as by certified mail, return receipt requested and the effective date of the termination was August 25, 2017 ("Initial Termination Date").  See August 14, 2017 Notice of Termination (Exhibit T).

57.     Between the time that the Notice of Termination was served and the Termination Date, Alani's Operating Entities continued to default in their obligations to Lehigh by failing to make timely payments to Lehigh and continuing to sell gasoline purchased from one or more third-party suppliers at all three Properties in violation of the Supply Agreements and, at the Ingleside Property, Lehigh's trademark rights.

58.     Based on the foregoing, on October 5, 2017, Alani and Alani's Operating Entities were provided with supplemental notice that the Ingleside Supply Agreement and Installment Agreement were all terminated.

59.     The October 5, 2017 Notice of Termination was served by hand delivery as well as by electronic mail to Plaintiffs' counsel and the effective date of the termination was October 27, 2017 ("Second Termination Date").  See October 5, 2017 Notice of Termination (Exhibit U).

60.     On October 30, 2017, Alani and Alani's Operating Entities were provided with another supplemental notice that the Ingleside Supply Agreement and Installment Agreement were all terminated.

61.     The October 30, 2017 Notice of Termination was served by hand delivery as well as by certified mail, return receipt requested and the effective date of the termination was

16

November 10, 2017 ("Third Termination Date"). <u>See</u> October 30, 2017 Notice of Termination (Exhibit V).

62.     Catch 26 currently owes Lehigh $ 478.45 at the Ingleside Property.

63.     Catch 26 currently owes Lehigh $ 22,192.20 at the Woodstock Property.

64.     Grayslake Stop & Shop currently owes Lehigh $ 26,909.32 at the Grayslake Property.

**III.    Jurisdiction**

65.     This Court has jurisdiction over the claims at the Ingleside Property pursuant to 28 U.S.C. §1331 as a federal question arises under the Petroleum Marketing Practice Act, 15 U.S.C. §2801 et seq. ("PMPA"), as well as other claims arising under the Constitution and laws and statutes of the United States.

66.     This Court has ancillary and/or supplemental jurisdiction over Lehigh's state law counterclaims relating to the Grayslake Property and Woodstock Property, which are compulsory.

67.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because a substantial part of the events giving rise to the claims occurred in this District.[1]

68.     The controversies in this case are justiciable, capable of disposition and Lehigh has a personal stake in the outcome.

---

[1]     It is the Defendants' position that this Honorable Court does not have jurisdiction over Plaintiffs' claims pertaining to the Woodstock and Grayslake Properties. However, since the issue of jurisdiction over these claims are pending before this Honorable Court, at this time, Defendants must assume that this Honorable Court will grant supplemental jurisdiction over these claims. If the Court does grant supplemental jurisdiction over Plaintiffs' claims pertaining to the Woodstock and Grayslake Properties, Defendants' counterclaims are compulsory; and accordingly, Defendants must assert their compulsory counterclaims at this time.

## COUNT I

### Breach of Contract:
### The Ingleside Supply and Installment Agreements

69.     Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

70.     Catch 26 and Gas Cap's failure to remit amounts owed to Lehigh when due with respect to the Ingleside Property constitutes a material breach of the Ingleside Supply and Installment Agreements.

71.     By virtue of Catch 26 and Gas Cap's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Catch 26 and Gas Cap as follows:

a.      Finding that Catch 26 and Gas Cap have breached and continues to breach the Ingleside Agreements;

b.      Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c.      Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.      Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT II

### Breach of Contract:
### The Woodstock Supply and Lease Agreements

72.     Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

73.     Catch 26's failure to remit amounts owed to Lehigh when due with respect to the Woodstock Property constitutes a material breach of the Woodstock Supply and Lease Agreements.

74.     By virtue of Catch 26's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Catch 26 as follows:

a.     Finding that Catch 26 has breached and continues to breach the Woodstock Agreements;

b.     Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c.     Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.     Granting such other and further relief as it deems appropriate under the circumstances.

**COUNT III**

**<u>Breach of Contract:</u>**
**<u>The Grayslake Supply and Lease Agreements</u>**

75.     Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

76.     Grayslake Stop & Shop's failure to remit amounts owed to Lehigh when due with

19

respect to the Grayslake Property constitutes a material breach of the Grayslake Supply and Lease Agreements.

77.     By virtue of Grayslake Stop & Shop's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

**WHEREAS**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Grayslake Stop & Shop as follows:

a.      Finding that Grayslake Stop & Shop has breached and continues to breach the Grayslake Agreements;

b.      Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c.      Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.      Granting such other and further relief as it deems appropriate under the circumstances.

**COUNT IV**

**Breach of Contract:**
**The Ingleside Supply and Installment Agreements**

78.     Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

79.     Catch 26 and Gas Cap's sale of gasoline at the Ingleside Property that was not purchased from Lehigh constitutes a material breach of the Ingleside Supply and Installment Agreements.

80.     By virtue of Catch 26 and Gas Cap's material breach, Defendants have been

20

damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Catch 26 and Gas Cap as follows:

a.  Finding that Catch 26 and Gas Cap have materially breached and continues to materially breach the Ingleside Agreements;

b.  Defendants are awarded all actual damages in anamount, which has not yet been finally determined;

c.  Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.  Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT V

### Breach of Contract:
### The Woodstock Supply and Lease Agreements

81.     Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

82.     Catch 26's sale of gasoline at the Woodstock Property that was not purchased from Lehigh constitutes a material breach of the Woodstock Supply and Lease Agreements.

83.     By virtue of Catch 26's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Catch 26 as follows:

a.    Finding that Catch 26 has materially breached and continues to materially breach the Woodstock Agreements;

b.    Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c.    Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.    Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT VI

### Breach of Contract:
### Grayslake Supply and Lease Agreements

84.    Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

85.    Grayslake Stop & Shop's sale of gasoline at the Grayslake Property that was not purchased from Lehigh constitutes a material breach of the Grayslake Supply and Lease Agreements.

86.    By virtue of Grayslake Stop & Shop's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Grayslake Stop & Shop as follows:

a.    Finding that Grayslake Stop & Shop has materially breached and continues to materially breach the Grayslake Agreements;

b.    Defendants are awarded all actual damages in an amount which has not yet been

finally determined;

c.      Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.      Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT VII

### Trademark Violations:
### The Ingleside Property

87.      Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

88.      Since at least August 16, 2017, Catch 26 has been and continues to sell non-Marathon branded gasoline under the Marathon trademark at the Ingleside Property.

89.      Catch 26's sale of non-Marathon branded gasoline under the Marathon trademark at the Property is a material breach Marathon's federal and state trademark rights.

90.      By selling non-Marathon branded gasoline under the Marathon trademark, Catch 26 is perpetrating a fraud on the public.

91.      Lehigh has the right to use Marathon's trademarks.

92.      Lehigh has the obligation to protect Marathon's trademarks.

93.      By virtue of Catch 26's trademark violation, Lehigh has been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdictional limit of this Court.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Catch 26 as follows:

a.      Finding that Catch 26 has committed trademark violations at the Ingleside

Property;

b.  Defendants are awarded all actual damages in an amount, which has not yet been finally determined;

c.  Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.  Granting such other and further relief as it deems appropriate under the circumstances.

**COUNT VIII**

**Declaratory Judgment:**
**Proper Termination of the Ingleside Agreements on August 14, 2017**

94.  Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

95.  Catch 26 has failed to exert good faith efforts to carry out and is in breach of its obligations under the Ingleside Supply and Installment Agreements, the terms and conditions of which are both reasonable and of material significance to the relationships thereunder.

96.  Accordingly, on August 14, 2017, Lehigh delivered to Catch 26 and Louay Alani a Notice of Termination, which indicated that the Ingleside Agreements would terminate on August 25, 2017.

97.  The August 14, 2017 Notice of Termination contained: (1) a statement of the intention of Lehigh to terminate the Ingleside Agreements; (2) the reason for termination; (3) the date on which termination was to take effect; and (4) a summary of the provisions of Title I of the Act which was prepared and published by the Secretary of Energy pursuant to PMPA §2804(d)(1).

98.  The aforestated acts of Catch 26 constituted the occurrence of events relevant to the Ingleside Agreements as a result of which termination was warranted, justified, reasonable and

permitted under the parties' relevant agreements as well as pursuant to the PMPA.

99.    By virtue of the foregoing, Lehigh's termination of its relationship with Catch 26 effective August 25, 2017 was valid and proper.

100.    Catch 26 has refused to vacate the Ingleside Property and, as such, has refused to recognize the validity of the August 14, 2017 Notice of Termination.

101.    Lehigh is without any adequate remedy at law.

102.    Based upon the foregoing, Lehigh is entitled to an Order declaring the lawfulness of the August 14, 2017 termination of the Ingleside Agreements pursuant to the terms of the Ingleside Agreements as well as the PMPA.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiffs Catch 26 and Gas Cap finding that Lehigh properly terminated the Ingleside Agreements on August 25, 2017, and for such further relief as this Court deems just and appropriate.

## COUNT IX

### Declaratory Judgment:
### Proper Termination of the Ingleside Agreements on October 5, 2017

103.    Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

104.    Catch 26 has failed to exert good faith efforts to carry out and is in breach of its obligations under the Ingleside Supply and Installment Agreements, the terms and conditions of which are both reasonable and of material significance to the relationships thereunder.

105.    Accordingly, on October 5, 2017, Lehigh delivered to Catch 26 and Louay Alani a supplemental Notice of Termination, which indicated that the Ingleside Agreements would terminate on October 27, 2017.

106.     The October 5, 2017 Notice of Termination contained: (1) a statement of the intention of Lehigh to terminate the Ingleside Agreements; (2) the reason for termination; (3) the date on which termination was to take effect; and (4) a summary of the provisions of Title I of the Act which was prepared and published by the Secretary of Energy pursuant to PMPA §2804(d)(1).

107.     The aforestated acts of Catch 26 constituted the occurrence of events relevant to the Ingleside Agreements as a result of which termination was warranted, justified, reasonable and permitted under the parties' relevant agreements as well as pursuant to the PMPA.

108.     By virtue of the foregoing, Lehigh's termination of its relationship with Catch 26 effective October 27, 2017 was valid and proper.

109.     Catch 26 has refused to vacate the Ingleside Property and, as such, has refused to recognize the validity of the October 5, 2017 Notice of Termination.

110.     Lehigh is without any adequate remedy at law.

111.     Based upon the foregoing, Lehigh is entitled to an Order declaring the lawfulness of the October 5, 2017 termination of the Ingleside Agreements pursuant to the terms of the Ingleside Agreements as well as the PMPA.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiffs Catch 26 and Gas Cap finding that Lehigh properly terminated the Ingleside Agreements on October 27, 2017, and for such further relief as this Court deems just and appropriate.

### COUNT X

### Declaratory Judgment:
### Proper Termination of the Ingleside Agreements on October 30, 2017

112.     Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

26

113. Catch 26 has failed to exert good faith efforts to carry out and is in breach of its obligations under the Ingleside Supply and Installment Agreements, the terms and conditions of which are both reasonable and of material significance to the relationships thereunder.

114. Accordingly, on October 30, 2017, Lehigh delivered to Catch 26 and Louay Alani a supplemental Notice of Termination, which indicated that the Ingleside Agreements would terminate on November 10, 2017.

115. The October 30, 2017 Notice of Termination contained: (1) a statement of the intention of Lehigh to terminate the Ingleside Agreements; (2) the reason for termination; (3) the date on which termination was to take effect; and (4) a summary of the provisions of Title I of the Act which was prepared and published by the Secretary of Energy pursuant to PMPA §2804(d)(1).

116. The aforestated acts of Catch 26 constituted the occurrence of events relevant to the Ingleside Agreements as a result of which termination was warranted, justified, reasonable and permitted under the parties' relevant agreements as well as pursuant to the PMPA.

117. By virtue of the foregoing, Lehigh's termination of its relationship with Catch 26 effective November 10, 2017 was valid and proper.

118. Catch 26 has refused to vacate the Ingleside Property and, as such, has refused to recognize the validity of the October 30, 2017 Notice of Termination.

119. Lehigh is without any adequate remedy at law.

120. Based upon the foregoing, Lehigh is entitled to an Order declaring the lawfulness of the October 30, 2017 termination of the Ingleside Agreements pursuant to the terms of the Ingleside Agreements as well as the PMPA.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiffs Catch 26 and Gas Cap finding that Lehigh properly terminated the

Ingleside Agreements on November 10, 2017, and for such further relief as this Court deems just and appropriate.

## COUNT XI

### Declaratory Judgment:
### Proper Termination of the Woodstock Agreements

121.     Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

122.     Catch 26 has failed to exert good faith efforts to carry out and is in breach of its obligations under the Woodstock Supply and Lease Agreements, the terms and conditions of which are both reasonable and of material significance to the relationships thereunder.

123.     Accordingly, on August 14, 2017, Lehigh delivered to Catch 26 and Louay Alani a Notice of Termination, which indicated that the Woodstock Agreements would terminate on August 25, 2017.

124.     The August 14, 2017 Notice of Termination contained: (1) a statement of the intention of Lehigh to terminate the Ingleside Agreements; (2) the reason for termination; (3) the date on which termination was to take effect; and (4) a summary of the provisions of Title I of the Act which was prepared and published by the Secretary of Energy pursuant to PMPA §2804(d)(1).

125.     The aforestated acts of Catch 26 constituted the occurrence of events relevant to the Woodstock Agreements as a result of which termination was warranted, justified, reasonable and permitted under the parties' relevant agreements.

126.     Despite the fact that the PMPA did not and does not govern the Woodstock Agreements, the aforestated acts of Catch 26 constituted the occurrence of events relevant to the Woodstock Agreements as a result of which termination was warranted, justified, reasonable and permitted under the PMPA.

28

127.     By virtue of the foregoing, Lehigh's termination of its relationship with Catch 26 effective August 25, 2017 was valid and proper.

128.     Catch 26 has refused to vacate the Woodstock Property and, as such, has refused to recognize the validity of the August 14, 2017 Notice of Termination.

129.     Lehigh is without any adequate remedy at law.

130.     Based upon the foregoing, Lehigh is entitled to an Order declaring the lawfulness of the termination the Woodstock Agreements pursuant to the terms of the Woodstock Agreements as well as the PMPA.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Catch 26 finding that Defendants properly terminated the Woodstock Agreements on August 25, 2017, and for such further relief as this Court deems just and appropriate.

**COUNT XII**

**Declaratory Judgment:**
**Proper Termination of the Grayslake Agreements**

131.     Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

132.     Grayslake Stop & Shop has failed to exert good faith efforts to carry out and is in breach of its obligations under the Grayslake Supply and Lease Agreements, the terms and conditions of which are both reasonable and of material significance to the relationships thereunder.

133.     Accordingly, on August 14, 2017, Lehigh delivered to Grayslake Stop & Shop and Louay Alani a Notice of Termination, which indicated that the Grayslake Agreements would terminate on August 25, 2017.

134.     The August 14, 2017 Notice of Termination contained: (1) a statement of the

intention of Lehigh to terminate the Ingleside Agreements; (2) the reason for termination; (3) the date on which termination was to take effect; and (4) a summary of the provisions of Title I of the Act which was prepared and published by the Secretary of Energy pursuant to PMPA §2804(d)(1).

135.    The aforestated acts of Grayslake Stop & Shop constituted the occurrence of events relevant to the Grayslake Agreements as a result of which termination was warranted, justified, reasonable and permitted under the parties' relevant agreements.

136.    Despite the fact that the PMPA did not and does not govern the Grayslake Agreements, the aforestated acts of Grayslake Stop & Shop constituted the occurrence of events relevant to the Grayslake Agreements as a result of which termination was warranted, justified, reasonable and permitted under the PMPA.

137.    By virtue of the foregoing, Lehigh's termination of its relationship with Grayslake Stop & Shop effective August 25, 2017 was valid and proper.

138.    Grayslake Stop & Shop has refused to vacate the Grayslake Property and, as such, has refused to recognize the validity of the August 14, 2017 Notice of Termination.

139.    Lehigh is without any adequate remedy at law.

140.    Based upon the foregoing, Lehigh is entitled to an Order declaring the lawfulness of the termination the Grayslake Agreements pursuant to the terms of the Grayslake Agreements as well as the PMPA.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Grayslake Stop & Shop finding that Defendants properly terminated the Grayslake Agreements on August 25, 2017, and for such further relief as this Court deems just and appropriate.

## COUNT XIII

### Trespass:
### The Ingleside Property

141.    Defendants reallege and incorporate by reference Paragraphs 1 to 187 as if set forth herein.

142.    The Ingleside Supply and Installment Agreements were terminated on August 25, 2017, at which time Catch 26 and Gas Cap were immediately required to vacate the Ingleside Property.

143.    Catch 26 and Gas Cap intentionally failed to vacate the Ingleside Property.

144.    To date, Catch 26 and Gas Cap have intentionally remained and continue to intentionally remain on the Ingleside Property without authorization or permission, in violation of the Ingleside Supply and Installment Agreements.

145.    As a result of Catch 26's continuing act of trespass, Lehigh has been damaged and will continue to suffer damages for as long as Catch 26 remains wrongfully  at the Ingleside Property in an amount yet to be finally determined but, in no case, less that the jurisdictional limit of this Court.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiffs Catch 26 and Gas Cap as follows:

a.    Finding that Plaintiffs Catch 26 and Gas Gap committed and continues to commit trespass at the Ingleside Property,

b.    Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c.    Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.      Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT XIV

### Trespass:
### The Woodstock Property

146.    Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

147.    The Woodstock Supply and Lease Agreements were terminated on August 25, 2017, at which time Catch 26 was immediately required to vacate the Woodstock Property.

148.    Catch 26 intentionally failed to vacate the Woodstock Property.

149.    To date, Catch 26 has intentionally remained and continues to intentionally remain on the Woodstock Property without authorization or permission, in violation of the Woodstock Supply and Lease Agreements.

150.    As a result of Catch 26's continuing act of trespass, Lehigh has been damaged and will continue to suffer damages for as long as Catch 26 remains wrongfully at the Woodstock Property in an amount yet to be finally determined but, in no case, less that the jurisdictional limit of this Court.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Catch 26 as follows:

a.      Finding that Plaintiff Catch 26 committed and continues to commit trespass at the Woodstock Property,

b.      Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c.      Defendants are awarded their legal expenses, costs and reasonable attorneys' fees

incurred in this action; and,

d.  Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT XV

### Trespass:
### The Grayslake Property

151.  Defendants reallege and incorporate by reference Paragraphs 1 to 196 as if set forth herein.

152.  The Grayslake Supply and Lease Agreements were terminated on August 25, 2017, at which time Grayslake Stop & Shop was immediately required to vacate the Grayslake Property.

153.  Grayslake Stop & Shop intentionally failed to vacate the Grayslake Property.

154.  To date, Grayslake Stop & Shop has intentionally remained and continues to intentionally remain on the Grayslake Property without authorization or permission, in violation of the Grayslake Supply and Lease Agreements.

155.  As a result of Grayslake Stop & Shop's continuing act of trespass, Lehigh has been damaged and will continue to suffer damages for as long as Grayslake Stop & Shop remains wrongfully at the Grayslake Property in an amount yet to be finally determined but, in no case, less that the jurisdictional limit of this Court.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Grayslake Stop & Shop as follows:

a.  Finding that Plaintiff Grayslake Stop & Shop committed and continues to commit trespass at the Grayslake Property,

b.  Defendants are awarded all actual damages in amount which has not yet been finally determined;

33

c.  Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.  Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT XVI

### State Law Claims for Eviction and Ejectment:
### The Ingleside Property

156.  Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein

157.  Lehigh properly terminated the Ingleside Supply and Installment Agreements.

158.  The Ingleside Agreements specified that, upon termination of the agreements, Catch 26 would vacate the Ingleside Property immediately.

159.  Lehigh is, therefore, entitled to immediate possession of the Ingleside Property.

160.  Lehigh is without any adequate remedy at law.

161.  Based on the foregoing, Lehigh is entitled to a warrant mandating the ejectment and eviction of Catch 26, its agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with it from the Ingleside Property.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiffs Catch 26 and Gas Cap as follows:

a.  Issuing a warrant mandating the ejectment and eviction of Catch 26 and Gas Cap, their agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with it from the Ingleside Property;

b.  Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c. Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d. Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT XVII

### State Law Claims for Eviction and Ejectment: The Woodstock Property

162. Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

163. Lehigh properly terminated the Woodstock Supply and Lease Agreements.

164. The Woodstock Agreements specified that, upon termination of the agreements, Catch 26 would vacate the Woodstock Property immediately.

165. Lehigh is, therefore, entitled to immediate possession of the Woodstock Property.

166. Lehigh is without any adequate remedy at law.

167. Based on the foregoing, Lehigh is entitled to a warrant mandating the ejectment and eviction of Catch 26, its agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with it from the Woodstock Property.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Catch 26 as follows:

a. Issuing a warrant mandating the ejectment and eviction of Catch 26, its agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with it from the Woodstock Property;

b. Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c.      Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.      Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT XVIII

### State Law Claims for Eviction and Ejectment:
### The Grayslake Property

168.    Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein

169.    Lehigh properly terminated the Grayslake Supply and Lease Agreements.

170.    The Grayslake Agreements specified that, upon termination of the agreements, Grayslake Stop & Shop would vacate the Grayslake Property immediately.

171.    Lehigh is, therefore, entitled to immediate possession of the Grayslake Property.

172.    Lehigh is without any adequate remedy at law.

173.    Based on the foregoing, Lehigh is entitled to a warrant mandating the ejectment and eviction of Grayslake Stop & Shop, its agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with it from the Grayslake Property.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Grayslake Stop & Shop as follows:

a.      Issuing a warrant mandating the ejectment and eviction of Grayslake Stop & Shop, its agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with it from the Grayslake Property;

b.      Defendants are awarded all actual damages in an amount which has not yet been finally determined;

36

c.     Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.     Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT XIX

### Preliminary and Permanent Injunction:
### The Ingleside Property

174.   Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

175.   As a result of the foregoing, Lehigh is likely to succeed on the merits herein.

176.   As a result of the foregoing, Lehigh will suffer irreparable harm if Catch 26 and Gas Cap's wrongful conduct is not immediately terminated.

177.   As a result of the foregoing, the balancing of the equities are in Lehigh's favor.

178.   Lehigh has no adequate remedy at law.

179.   Based upon the foregoing, Lehigh is entitled to a preliminary injunction and temporary restraining order tailored to prevent it from any additional harm pending the resolution of this matter including, but not limited, to an Order enjoining Catch 26 and Gas Cap from selling gasoline at the Ingleside Property that is not purchased from Lehigh, enjoining Catch 26 from accessing the gasoline dispensing area of the Ingleside Property for any purpose and granting to Lehigh immediate and exclusive possession of the Ingleside Property.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiffs Catch 26 and Gas Cap as follows:

a.     Issuing a permanent injunction, preliminary injunction and temporary restraining order tailored to prevent Defendants from any additional harm pending the

resolution of this matter including, but not limited, to an Order enjoining Catch 26 and Gas Cap from selling gasoline at the Ingleside Property that is not purchased from Defendants, enjoining Catch 26 and Gas Cap from accessing the gasoline dispensing area of the Ingleside Property for any purpose and granting to Defendants immediate and exclusive possession of the Ingleside Property;

b.    Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c.    Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.    Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT XX

### Preliminary and Permanent Injunction: The Woodstock Property

180.    Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

181.    As a result of the foregoing, Lehigh is likely to succeed on the merits herein.

182.    As a result of the foregoing, Lehigh will suffer irreparable harm if Catch 26's wrongful conduct is not immediately terminated.

183.    As a result of the foregoing, the balancing of the equities are in Lehigh's favor.

184.    Lehigh has no adequate remedy at law.

185.    Based upon the foregoing, Lehigh is entitled to a preliminary injunction and temporary restraining order tailored to prevent it from any additional harm pending the resolution of this matter including, but not limited, to an Order enjoining Catch 26 from selling gasoline at the

38

Woodstock Property that is not purchased from Lehigh, enjoining Catch 26 from accessing the gasoline dispensing area of the Woodstock Property for any purpose and granting to Lehigh immediate and exclusive possession of the Woodstock Property.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Catch 26 as follows:

a.  Issuing a permanent injunction, preliminary injunction and temporary restraining order tailored to prevent Defendants from any additional harm pending the resolution of this matter including, but not limited, to an Order enjoining Catch 26 from selling gasoline at the Woodstock Property that is not purchased from Defendants, enjoining Catch 26 from accessing the gasoline dispensing area of the Woodstock Property for any purpose and granting to Defendants immediate and exclusive possession of the Woodstock Property;

b.  Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c.  Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.  Granting such other and further relief as it deems appropriate under the circumstances.

**COUNT XXI**

**Preliminary and Permanent Injunction:**<br>**The Grayslake Property**

186.  Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

187.  As a result of the foregoing, Lehigh is likely to succeed on the merits herein.

39

188.     As a result of the foregoing, Lehigh will suffer irreparable harm if Grayslake Stop & Shop's wrongful conduct is not immediately terminated.

189.     As a result of the foregoing, the balancing of the equities are in Lehigh's favor.

190.     Lehigh has no adequate remedy at law.

191.     Based upon the foregoing, Lehigh is entitled to a preliminary injunction and temporary restraining order tailored to prevent it from any additional harm pending the resolution of this matter including, but not limited, to an Order enjoining Grayslake Stop & Shop from selling gasoline at the Grayslake Property that is not purchased from Lehigh, enjoining Grayslake Stop & Shop from accessing the gasoline dispensing area of the Grayslake Property for any purpose and granting to Lehigh immediate and exclusive possession of the Grayslake Property.

**WHEREFORE**, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiff Grayslake Stop & Shop as follows:

a.      Issuing a permanent injunction, preliminary injunction and temporary restraining order tailored to prevent Defendants from any additional harm pending the resolution of this matter including, but not limited, to an Order enjoining Grayslake Stop & Shop from selling gasoline at the Grayslake Property that is not purchased from Defendants, enjoining Grayslake Stop & Shop from accessing the gasoline dispensing area of the Grayslake Property for any purpose and granting to Defendants immediate and exclusive possession of the Grayslake Property;

b.      Defendants are awarded all actual damages in an amount which has not yet been finally determined;

c.      Defendants are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.    Granting such other and further relief as it deems appropriate under the circumstances.

**THIRD-PARTY COMPLAINT**

Third-Party Plaintiffs LGP Realty Holdings, LP, Lehigh Gas Wholesale, LLC, Lehigh Gas Wholesale Services, Inc., and CrossAmerica Partners LP (collectively "Third-Party Plaintiffs" or "Lehigh"), by and through their attorneys, Sorling Northrup and Harriton & Furrer, LLP, for their Third-Party Complaint against Third-Party Defendants Catch 26, LLC ("Catch 26"), Gas Cap Fuels, LLC ("Gas Cap"), Grayslake Stop & Shop, LLC's ("Grayslake Stop & Shop"), Louay Alani and Ali Alani, allege and state as follows:

1.    Third-Party Plaintiffs reallege and incorporate by reference Paragraphs "1" through "191" of the Defendants Counterclaims as if set forth herein.

2.    Lehigh Gas Wholesale Services, Inc. ("LGW Services") is a Delaware corporation with its principal place of business in the Commonwealth of Pennsylvania.

3.    CrossAmerica Partners LP ("CAP") is a Delaware limited partnership with its principal place of business in the Commonwealth of Pennsylvania.

**COUNT I**

**Breach of Guaranty:**
**The Ingleside Agreements**

4.    Third-Party Plaintiffs reallege and incorporate by reference Paragraphs 1 to 3 of Third-Party Plaintiffs Complaint  as if set forth herein.

5.    Third-Party Defendants Louay Alani and Ali Alani have failed to satisfy the obligations of Catch 26 and Gas Cap under the Ingleside Agreements.

6.    Based upon all of the foregoing, Louay Alani and Ali Alani are in material breach of

41

the personal guaranties entered into by them.

7.    By virtue of Louay Alani and Ali Alani's material breaches of their personal guaranties, Lehigh has been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less that the jurisdictional limit of this Court.

**WHEREFORE**, Third-Party Plaintiffs pray this Honorable Court enter a judgment in their favor and against Third-Party Defendants Louay Alani and Ali Alani as follows:

a.    Finding Third-Party Defendants Louay Alani and Ali Alani personally liable for Catch 26 and Gas Cap's obligations under the Ingleside Agreements,

b.    Third-Party Plaintiffs are awarded all actual damages in an amount which has not yet been finally determined;

c.    Third-Party Plaintiffs are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.    Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT II

### Breach of Guaranty:
### The Woodstock Agreements

8.    Third-Party Plaintiffs reallege and incorporate by reference Paragraphs 1 to 3 of the Third-Party Complaint as if set forth herein.

9.    Third-Party Defendants Louay Alani and Ali Alani have failed to satisfy the obligations of Catch 26 under the Woodstock Agreements.

10.    Based upon all of the foregoing, Louay Alani and Ali Alani are in material breach of the personal guaranties entered into by them.

11.    By virtue of Louay Alani and Ali Alani's material breaches of their personal

guaranties, Lehigh has been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less that the jurisdictional limit of this Court.

**WHEREFORE**, Third-Party Plaintiffs pray this Honorable Court enter a judgment in their favor and against Third-Party Defendants Louay Alani and Ali Alani as follows:

a.  Finding Third-Party Defendants Louay Alani and Ali Alani personally liable for Catch 26's obligations under the Woodstock Agreements,

b.  Third-Party Plaintiffs are awarded all actual damages in an amount which has not yet been finally determined;

c.  Third-Party Plaintiffs are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.  Granting such other and further relief as it deems appropriate under the circumstances.

## COUNT III

### Breach of Guaranty: The Grayslake Property

12.  Third-Party Plaintiffs reallege and incorporate by reference Paragraphs 1 to 3 of the Third-Party Complaint as if set forth herein.

13.  Third-Party Defendants Louay Alani and Ali Alani have failed to satisfy the obligations of Grayslake Stop & Shop under the Grayslake Agreements.

14.  Based upon all of the foregoing, Louay Alani and Ali Alani are in material breach of the personal guaranties entered into by them.

15.  By virtue of Louay Alani and Ali Alani's material breaches of their personal guaranties, Lehigh has been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less that the jurisdictional limit of this Court.

**WHEREFORE**, Third-Party Plaintiffs pray this Honorable Court enter a judgment in their favor and against Third-Party Defendants Louay Alani and Ali Alani as follows:

a.   Finding Third-Party Defendants Louay Alani and Ali Alani personally liable for Grayslake Stop & Shop's obligations under the Grayslake Agreements,

b.   Third-Party Plaintiffs are awarded all actual damages in anamount which has not yet been finally determined;

c.   Third-Party Plaintiffs are awarded their legal expenses, costs and reasonable attorneys' fees incurred in this action; and,

d.   Granting such other and further relief as it deems appropriate under the circumstances.

Dated:  Springfield, Illinois
        December 8, 2017

                                         Respectfully submitted,


/s/ David A. Rolf                                   /s/ Urs Broderick Furrer
**DAVID A. ROLF, ESQ.**                             **URS BRODERICK FURRER, ESQ.**
**SORLING NORTHRUP ATTORNEYS**                      **HARRITON & FURRER, LLP**
Attorneys for Defendants                            Attorneys for Defendants
1 North Old State Capital Plaza, Suite 200          84 Business Park Drive, Suite 302
P.O. Box 5131                                       Armonk, New York 10504
Springfield, Illinois 62705                         (914) 730-3400
(217) 544-1144                                      UBFurrer@hflawllp.com
darolf@sorlinglaw.com                               *Admitted pro hac vice*
Illinois ARDC Co. 6196030

                                                    /s/ Kimberly A. Sanford
                                                    **KIMBERLY A. SANFORD, ESQ.**
                                                    **HARRITON & FURRER, LLP**
                                                    Attorneys for Defendants
                                                    84 Business Park Drive, Suite 302
                                                    Armonk, New York 10504
                                                    (914) 730-3400
                                                    KASanford@hflawllp.com
                                                    *Admitted pro hac vice*

**TO:** **JOHN J. CONWAY, ESQ.**
**SULLIVAN HINCKS & CONWAY**
Attorneys for Plaintiffs
120 West 22nd Street, Suite 100
Oak Brook, Illinois 60523
(630) 573-5021
Illinois ARDC No. 6217597