# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CATCH 26, LLC, an Illinois Limited Liability Company, GAS CAP FUELS, LLC, an Illinois Limited Liability Company, and GRAYSLAKE STOP & SHOP, LLC, an Illinois Limited Liability Company, | Case No. 17-cv-6135 <br><br> Judge Sharon Johnson Coleman |
| Plaintiffs, | |
| v. | |
| LGP REALTY HOLDINGS, LP, a Delaware Limited Partnership, as successor by assignment from PT, LLC, BAPA, LLC and STATE OIL COMPANY and LEHIGH GAS WHOLESALE, LLC, a Delaware Limited Liability Company, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

The defendants' motion to dismiss [18] is granted in part and denied in part. The plaintiffs' Petroleum Marketing Practices Act (PMPA) claims are dismissed with respect to the Grayslake and Woodstock locations. The plaintiffs' PMPA claim as to the Ingleside location remains pending, and this Court exercises its supplemental jurisdiction over all of the remaining claims in this case.

**Background**

The background of this case is fully set forth in this Court's prior rulings on the plaintiff's multiple motions for preliminary restraining orders. The defendants now move this Court, through a motion filed prior to those rulings, to dismiss the plaintiffs' federal claims for failure to state a claim, to decline to exercise supplemental jurisdiction over the remaining claims, and accordingly to dismiss this action.

**Legal Standard**

1

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must allege factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Put differently, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *see also* Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

As an initial matter, the Court notes that the defendants offer a conclusory argument that the plaintiffs' federal claims must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), based on the plaintiffs' failure to satisfy the eligibility requirements of the PMPA. The PMPA, however, does not contain any language suggesting that compliance with the definitions contained within it is a jurisdictional prerequisite to suit. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."). Accordingly, the plaintiffs' satisfaction of the statutory definitions of the PMPA is not a prerequisite to this Court's exercise of subject matter jurisdiction over their federal claims and there is no basis for dismissing their claims pursuant to Rule 12(b)(1). The Court

accordingly turns to the question of whether the plaintiffs are able to state a claim on which relief may be granted under the PMPA.

The defendants contend that the plaintiffs' PMPA claims as to the Grayslake and Woodstock locations must be dismissed because those locations are not subject to the PMPA. The Court was already required to answer the question of whether the PMPA applied to the Grayslake and Woodstock locations in its October 27, 2017, opinion on the plaintiffs' motion seeking a preliminary injunction under the PMPA. At that time, the Court concluded that the express provisions of the PMPA did not apply to the Grayslake and Woodstock locations and that neither the defendants past conduct nor the cross-default provisions contained in the plaintiffs' contracts with the defendants were capable of altering that outcome. The parties subsequently completed their briefing of the present motion, adding further nuance to their arguments on these points. The present motion to dismiss occupies a different procedural posture than the prior motion, and this Court accordingly will consider the parties' renewed arguments as to the applicability of the PMPA.

Broadly speaking, the PMPA protects the interests of franchisees by regulating when and how gas station franchises can be terminated. Under section 2801(1)(A) of the PMPA, the term franchise is defined as:

> any contract—
> (1) between a refiner and a distributor,
> (ii) between a refiner and a retailer,
> (iii) between a distributor and another distributor, or
> (iv) between a distributor and a retailer,
> under which a refiner or distributor (as the case may be) *authorizes or permits a retailer or distributor to use*, in connection with the sale, consignment, or distribution of motor fuel, *a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.*

15 U.S.C. § 2801(1)(A) (emphasis added). That definition further states that the term "franchise" includes:

> (i) any contract under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale, consignment, or distribution of motor fuel *under a trademark* which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such occupancy;
>
> (ii) any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed—
>   (I) *under a trademark owned or controlled by a refiner*; or
>   (II) under a contract which has existed continuously since May 15, 1973, and pursuant to which, on May 15, 1973, motor fuel was sold, consigned or distributed under a trademark owned or controlled on such date by a refiner; and
>
> (iii) the unexpired portion of any franchise, as defined by the preceding provisions of this paragraph, which is transferred or assigned as authorized by the provisions of such franchise or by any applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise.

15 U.S.C. § 2801(1)(B) (emphasis added).

Here, it is undisputed that the Ingleside location sold fuel under the Marathon trademark and therefore constituted a franchise pursuant to the PMPA. It is similarly undisputed that the Grayslake and Woodstock locations are unbranded gas stations, and that those locations did not have express consent, authorization, or permission to use a third parties' trademark in connection with the sale or distribution of motor fuel. Nevertheless, the plaintiffs contend that those locations are subject to the PMPA because the Supply Agreements for those locations addressed issues of branding. Indeed, the supply agreements provided that the retailer must "maintain all signs and advertising related to the gasoline brand being dispensed," contemplated advertising fees from the oil company, indemnified the oil company whose logo or signage was used in connection with the sale of petroleum products, and provided that failure to comply with oil company branding requirements would be grounds for termination. The plaintiffs argue that these provisions extended a right to use a trademark. The provisions in question certainly anticipated the use of trademarks,

but there can be no doubt that they did not confer any right to use a trademark or require that the sale of fuel occur under a trademark given their failure to identify a specific trademark or brand or to expressly confer any right to use such a mark. Accordingly, they are incapable of satisfying the plain textual requirements of the PMPA. *See PDV Midwest Ref., L.L.C. v. Armada Oil and Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002) (observing that a letter concerning unbranded gasoline did not reference the PMPA because "unbranded contracts are not subject to the requirements of the PMPA."); *Unified Dealer Grp. v. Tosco Corp.*, 16 F. Supp. 2d 1137, 1140 (N.D. Cal. 1998) (noting that a contract to sell unbranded motor fuel is not subject to the PMPA because a trademark is an essential element of a PMPA franchise."), *aff'd* 216 F.3d 1085 (9th Cir. 2000).

This conclusion is supported by the lease agreements for the Grayslake and Woodside properties, both of which expressly provide that:

> *This lease is not a Franchise within the meaning of federal or state legislation. Landlord is not selling a way of doing business, and is not selling the right to use a trademark.* Nothing contained in this Lease shall be deemed or construed by the parties hereto or by a third party to create the relationship of principal and agent or of partnership or of joint venture or of any association whatsoever between Landlord and Tenant, it being expressly understood and agreed that neither the method of computation of rent nor any other provisions contained in this Lease nor any act or acts of the parties hereto, shall be deemed to create any relationship between Landlord and Tenant other than the relationship of Landlord and Tenant.

(Emphasis added). Accordingly, the Grayslake and Woodstock locations do not satisfy the PMPA's definition of "franchise." *See* 15 U.S.C. § 2801(1).

The plaintiffs alternatively contend that the defendants are bound by their past admission that the PMPA applies to the Grayslake and Woodstock locations. The cases that the plaintiffs rely on, however, all concern clear statements of intent capable of being enforced via contract law or promissory estoppel. *See Rabe v. United Air Lines, Inc.*, 646 F.3d 866, 871–72 (7th Cir. 2011) (applying United States law where an employee had signed a written agreement accepting the application of

United States law); *Peters v. Gilead Scis., Inc.*, 533 F.3d 594, 600–601 (7th Cir 2008) (enforcing leave provisions in an employee handbook). Here, by contrast, the only contractual language that the plaintiffs point to is the Supply Agreement's statement that "[t]he parties specifically acknowledge and agree that the franchise relationship (as defined in the Petroleum Marketing Practices Act, 15 USC §2801 et seq.) created by this Agreement between the Retailer and the Supplier is necessarily contingent upon the Retailer's ability to maintain possession of the Premises." This language falls far short of demonstrating a mutual intent that the PMPA apply to the parties' relationship and therefore is incapable of establishing that the protections of the PMPA should be applied here based on contract law or promissory estoppel.

Finally, the plaintiffs contend that the cross-default provision renders all three gas stations subject to the PMPA because the Ingleside location is subject to the PMPA. As this Court previously held, however, the cross-default provision does not provide for automatic termination, and therefore does not extend the application of the PMPA to the Grayslake or Woodstock locations. *Cf. Atlantic Richfield Co. v. Brown*, 85 C. 5131, 1985 U.S. Dist. Lexis 14720 at *20 (N.D. Ill. Oct. 21, 1985) (Kocoras, J.) (holding that "where termination of the premises lease automatically triggers termination of [a] mini-market agreement, the lease, motor fuel franchise agreement, and mini-market are so inextricably linked that the PMPA will govern termination of the mini-market agreement as well"). Accordingly, the PMPA does not apply to the Grayslake or Woodstock locations, and the plaintiffs' claims under the PMPA regarding those stations must be dismissed.

Although the defendants concede that the PMPA applies to the Ingleside location, they nevertheless contend that the plaintiffs cannot state a claim because the termination of the Ingleside location complied with the PMPA's requirements. In considering a motion to dismiss, however, the Court is limited to the factual allegations contained in the complaint and those limited matters of which the Court may take judicial notice. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th

6

Cir. 1987). The allegations set forth in the complaint do not establish that the misbranding or adulteration of fuel has occurred at the Ingleside location, that proper notice of termination was given, or that termination was otherwise proper. Accordingly, although the parties have presented evidence during their arguments on prior motions capable of suggesting that the termination of the Ingleside location was valid, this Court is precluded from considering that evidence in ruling on the present motion.

Finally, in light of the Court's determination that the PMPA does not apply to the Woodstock or Grayslake locations, the defendants ask this Court to decline to exercise its supplemental jurisdiction over the plaintiffs' state law claims with respect to those locations. A district court, in any civil action in which it has original jurisdiction, also has supplemental jurisdiction to hear all other claims which are so related to the claims within the court's original jurisdiction as to constitute part of the same case or controversy. 28 U.S.C. § 1367. Here, the only remaining claim over which this Court has original jurisdiction is Gas Cap and Catch 26's PMPA claim concerning the Ingleside location.

Claims form part of the same case or controversy when they derive from a common nucleus of operative fact. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 682 (7th Cir. 2014) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). A loose factual connection between the claims is generally sufficient to establish a common nucleus of operative fact. *McCoy*, 760 F.3d at 682 (quoting *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Here, there can be no reasonable dispute that the state law claims concerning the Ingleside location arise from the same common nucleus of operative fact as the surviving PMPA claim. The termination of the Grayslake and Woodstock locations, moreover, appears to have happened as part of the same course of conduct as the termination of the Ingleside location. The three locations, moreover, were all subject to a cross-default provision, and the defendants have expressed their

7

intention to rely, in part, upon that provision. Application of the cross-default provision with respect to the Ingleside location would place the parties' contractual relations at the Grayslake and Woodstock locations at issue, creating the potential for parallel litigation concerning those locations in state and federal court. In light of this risk, the broad reach of the cross-default provision, and the timing of the defendants' actions, this Court exercises its supplemental jurisdiction over the plaintiffs' remaining state law claims. *See Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 981 (7th Cir. 2011) (recognizing that the identity of the issues, the convenience to both plaintiffs and defendants of not having to litigate in multiple forums, and the economy of resolving all claims at once suggest that the exercise of supplemental jurisdiction is ordinarily appropriate.").

**Conclusion**

For the foregoing reasons, the defendants' motion to dismiss [18] is granted with respect to the plaintiffs PMPA claims concerning the Grayslake and Woodstock locations, but is denied in all other respects.


IT IS SO ORDERED.

Date: 4/17/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge