IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Catch 26, LLC, Gas Cap Fuels, LLC, and Grayslake Stop & Shop, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 17-cv-06135 |
| | ) | |
| LGP Realty Holdings, LP, as successor by assignment from PT, LLC, BAPA, LLC and State Oil Company, and Lehigh Gas Wholesale, LLC, | ) ) ) ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| LGP Realty Holdings LP, Lehigh Gas Wholesale, LLC, Lehigh Gas Wholesale Services, Inc., and Crossamerica Partners LP, | ) ) ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, | ) ) ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## ANSWER TO COUNTERCLAIM

Now come the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop

& Shop, LLC, Louay Alani and Ali Alani (collectively referred to as "TPDs"), by and through their

attorney, Timothy C. Culbertson, and for their Answer to the Counterclaim filed in this matter, allege

as follows:

## I. The Parties and Their Relationships

1.    LGP Realty Holdings LP ("LGP Realty") is a Delaware limited partnership with its principal place of business in the Commonwealth of Pennsylvania.

ANSWER:

1.    TPDs lack knowledge and information sufficient to allow them to form a belief about the truth of the allegations of Paragraph 1.

2.    Lehigh Gas Wholesale LLC ("LGW") is a Delaware limited liability company with its principal place of business in the Commonwealth of Pennsylvania.

ANSWER:

2.    TPDs lack knowledge and information sufficient to allow them to form a belief about the truth of the allegations of Paragraph 2.

3.    Lehigh Gas Wholesale Services, Inc. ("LGW Services") is a Delaware corporation with its principal place of business in the Commonwealth of Pennsylvania.

ANSWER:

3.    TPDs lack knowledge and information sufficient to allow them to form a belief about the truth of the allegations of Paragraph 3.

4.    CrossAmerica Partners LP ("CAP") is a Delaware limited partnership with its principal place of business in the Commonwealth of Pennsylvania.

ANSWER:

4.    TPDs lack knowledge and information sufficient to allow them to form a belief about the truth of the allegations of Paragraph 4.

5.    Catch 26, LLC ("Catch 26") is an Illinois limited liability company with its principal place of business in the State of Illinois.

ANSWER:

    5.      TPDs admit the allegations of Paragraph 5.

    6.   Gas Cap Fuels, LLC ("Gas Cap") is an Illinois limited liability company with its principal place of business in the State of Illinois.

ANSWER:

    6.      TPDs admit the allegations of Paragraph 6.

    7.   Grayslake Stop & Shop, LLC ("Grayslake Stop & Shop") is an Illinois limited liability company with its principal place of business in the State of Illinois.

ANSWER:

    7.      TPDs admit the allegations of Paragraph 7.

    8.   Louay Alani is an individual who, upon information and belief, resides in the State of Illinois.

ANSWER:

    8.      TPDs admit the allegations of Paragraph 8.

    9.   Ali Alani is an individual who, upon information and belief, resides in the State of Illinois.

ANSWER:

    9.      TPDs admit the allegations of Paragraph 9.

    10.  LGP Realty, LGW, LGW Services and CAP, through their various affiliate entities, (collectively referred to herein as "Lehigh") are engaged in the marketing and distribution of petroleum products in the State of Illinois and certain other states.

ANSWER:

    10.     TPDs lack knowledge and information sufficient to allow them to form a belief about the truth of the allegations of Paragraph 10.

### A. The Ingleside Property

11. On or about April 12, 2013, PT, L.L.C. and BAPA, L.L.C. entered into an Installment Agreement for Warranty Deed and Personal Property with Gas Cap and Louay Alani related to the property located at 26025 West Grand Avenue, Ingleside, Illinois 60041 ("Ingleside Property") ("Ingleside Installment Agreement"). See generally Ingleside Installment Agreement (Exhibit A).

ANSWER:

11. TPDs admit the allegations of Paragraph 11.

12. Pursuant to the terms of the Ingleside Installment Agreement, Gas Cap agreed to purchase the Ingleside Property for $445,000.00 plus the cost of the then-gasoline inventory.

ANSWER:

12. TPDs admit the execution of the Agreement, and deny any of the allegations of

Paragraph 12 to the extent that any of them contradict the plain terms of the Agreement.

13. An initial payment of $44,500.00 was due at the Initial Closing on April 12, 2013 and the remainder due was evidenced by a Promissory Note ("Ingleside Promissory Note") to be paid in full by April 1, 2020, at which time, if all conditions had been met, the Ingleside Property would have been conveyed to Gas Cap at the Final Closing. See Ingleside Installment Agreement, pp.1-2, Section 2. See also Ingleside Promissory Note (Exhibit B).

ANSWER:

13. TPDs admit the execution of the Agreements referenced, and deny any of the

allegations of Paragraph 13 to the extent that any of them contradict the plain terms of those

Agreements.

14. Between the Initial Closing and the Final Closing, Gas Cap was granted possession of the Ingleside Property. See Ingleside Installment Agreement, Section 3.

4

ANSWER:

      14.     TPDs admit that the Ingleside Installment Agreement provides as characterized in

Paragraph 14.

      15.  On or about April 12, 2013, Catch 26 entered into a Petroleum Products Supply Agreement with State Oil wherein Catch 26 agreed to purchase all petroleum products to be sold at the Ingleside Property from State Oil ("Ingleside Supply Agreement"). See generally Ingleside Supply Agreement (Exhibit C).

ANSWER:

      15.     TPDs admit the allegations of Paragraph 15.

      16.  Louay Alani is the sole Manager for Catch 26. See Office of the Illinois Secretary of State, LLC Managers for Catch 26 Form (Exhibit D).

ANSWER:

      16.     TPDs admit the allegations of Paragraph 16.

      17.  The term of the Ingleside Supply Agreement was intended to parallel the term of the Ingleside Installment Agreement in that the Ingleside Supply Agreement commenced on the date Gas Cap took possession of the Ingleside Property and was for an initial term of eight (8) years. See Ingleside Supply Agreement, Section 8.

ANSWER:

      17.     TPDs deny the allegations of Paragraph 17 to the extent that any of them contradict

or misrepresent the plain terms of the Ingleside Supply Agreement.

      18.  Louay Alani and Ali Alani personally guaranteed the Ingleside Installment Agreement and Supply Agreement ("Ingleside Guaranty"). See Ingleside Guaranties (Exhibit E).

ANSWER:

      18.     TPDs admit the allegations of Paragraph 18.

19.  The Ingleside Property is a branded gasoline station, which means that the only gasoline that can be sold at the station is Marathon Petroleum Corp. ("Marathon") branded gasoline station.

ANSWER:

19.    TPDs admit the allegations of Paragraph 19.

20.  The Ingleside Supply Agreement is governed by the Petroleum Marketing Practices Act ("PMPA").

ANSWER:

20.    TPDs admit the allegations of Paragraph 20.

**B.    The Grayslake Facility**

21.  On or about October 22, 2014 PT, L.L.C. and BAPA, L.L.C. also entered into a Lease wherein PT, L.L.C. and BAPA, L.L.C. leased the property located at 735 Belvidere Road, Grayslake Illinois 60030 ("Grayslake") to Grayslake Stop & Shop for the purpose of operating a gasoline station ("Grayslake Lease"). See generally Grayslake Lease (Exhibit F).

ANSWER:

21.    TPDs admit the allegations of Paragraph 21.

22.  Louay Alani is the sole Manager for Grayslake Stop & Shop. See Office of the Illinois Secretary of State, LLC Managers for Grayslake Stop & Shop Form (Exhibit G).

ANSWER:

22.    TPDs admit the allegations of Paragraph 22.

23.  The term of the Grayslake Lease was from October 24, 2014 to October 31, 2017. See Grayslake Lease, Section 1.2.

ANSWER:

23.    TPDs admit the original term of the Lease was as set forth at Paragraph 23.

24.  On or about October 22, 2014, Grayslake Stop & Shop entered into a Petroleum Products Supply Agreement with State

```
Oil wherein Grayslake Stop & Shop agreed to purchase all
petroleum products to be sold at the Grayslake Property from
State Oil ("Grayslake Supply Agreement"). See generally
Grayslake Supply Agreement (Exhibit H).
```

ANSWER:

    24.    TPDs admit the allegations of Paragraph 24.

```
25. The term of the Grayslake Supply Agreement was intended
to parallel the term of the Grayslake Lease. See Grayslake
Supply Agreement, Section 8.
```

ANSWER:

    25.    TPDs admit the allegations of Paragraph 25.

```
26. Grayslake Stop & Shop entered into a Security Agreement,
also on October 22, 2014, in which it granted to State Oil a
security interest in Grayslake Stop & Shop's account
receivables, equipment, inventory, fixtures, documents, chattel
paper, instruments, intangibles and the proceeds and products
thereof ("Grayslake Security Agreement"). See generally
Grayslake Security Agreement (Exhibit I).
```

ANSWER:

    26.    TPDs admit the execution of the Security Agreement and deny any allegations of

Paragraph 26 that contradict or misrepresent the plain language of that document, and further state that

there is no record that such interest was perfected pursuant to Illinois law.

```
27. Louay Alani and Ali Alani personally guaranteed Grayslake
Stop & Shop's obligations under the Grayslake Lease and Supply
Agreement ("Grayslake Guaranty"). See Grayslake Guaranty
(Exhibit J).
```

ANSWER:

    27.    TPDs admit the execution of the guaranty, and deny any allegations of Paragraph 27

that contradict or misrepresent the plain language of that document.

28. The Grayslake Property is an unbranded gasoline station, which means that any brand of gasoline can be sold at the station as long as it is supplied by Lehigh.

ANSWER:

28.     TPDs admit that the Grayslake Property is an unbranded gasoline station.

29. The Grayslake Supply Agreement is not governed by the PMPA.

ANSWER:

29.     TPDs deny the allegations of Paragraph 29 as the Grayslake Supply Agreement

specifically provides that it is subject to the Act. *See*, Paragraph 8.

**C.  The Woodstock Facility**

30. On or about October 22, 2014 PT, L.L.C. and BAPA, L.L.C. also entered into a Lease wherein PT, L.L.C. and BAPA, L.L.C. leased the property located at 401 S. Eastwood, Woodstock, Illinois 60098 ("Woodstock Property") to Catch 26 for the purpose of operating a gasoline station ("Woodstock Lease"). See generally Woodstock Lease (Exhibit K).

ANSWER:

30.     TPDs admit the allegations of Paragraph 25.

31. Catch 26 is the same entity that entered into the Ingleside Supply Agreement and Louay Alani is the sole manager for the limited liability company. The term of the Woodstock Lease was from October 24, 2014 to October 31, 2017. See Woodstock Lease, Section 1.2.

ANSWER:

31.     TPDs admit the allegations of Paragraph 31.

32. On or about October 22, 2014, Catch 26 entered into a Petroleum Products Supply Agreement with State Oil wherein Catch 26 agreed to purchase all petroleum products to be sold at the Woodstock Property from State Oil ("Woodstock Supply Agreement"). See generally Woodstock Supply Agreement (Exhibit L).

ANSWER:

    32.    TPDs admit the allegations of Paragraph 32.

    `33.  The term of the Woodstock Supply Agreement was intended to parallel the term of the Woodstock Lease. See Woodstock Supply Agreement, Section 8.`

ANSWER:

    33.    TPDs admit the allegations of Paragraph 33.

    `34.  Catch 26 entered into a Security Agreement, also on October 22, 2014, in which it granted to State Oil a security interest in Catch 26's account receivables, equipment, inventory, fixtures, documents chattel paper, instruments, intangibles and the proceeds and products thereof ("Woodstock Security Agreement"). See `_generally_` Woodstock Security Agreement (Exhibit M).`

ANSWER:

    34.    TPDs admit the execution of the Security Agreement and deny any allegations of Paragraph 34 that contradict or misrepresent the plain language of that document, and further state that there is no record that such interest was perfected pursuant to Illinois law.

    `35.  Louay Alani and Ali Alani personally guaranteed Catch 26's obligations under the Woodstock Lease and Supply Agreement ("Woodstock Guaranty"). See Woodstock Guaranty (Exhibit N).`

ANSWER:

    35.    TPDs admit the execution of the guaranty, and deny any allegations of Paragraph 35 that contradict or misrepresent the plain language of that document.

    `36.  The Woodstock Property is an unbranded gasoline station, which means that any brand of gasoline can be sold at the station as long as it is supplied by Lehigh.`

ANSWER:

    36.    TPDs admit that the Woodstock Property is an unbranded gasoline station.

```
37.  The Woodstock Supply Agreement is not governed by the
PMPA.
```

ANSWER:

37.    TPDs deny the allegations of Paragraph 37 as the Woodstock Supply Agreement

specifically provides that it is subject to the Act. *See,* Paragraph 8.

```
D.   The Assignments
```

```
38.  Effective September 27, 2016, State Oil's rights and
obligations under the Grayslake and Woodstock Leases, Supply
Agreements and Security Agreements and the Ingleside Security
Agreement, Supply Agreement and Promissory Note were assigned
to LGW, LGP Realty or LGP Realty's subsidiaries and LGW
Services, each of which were affiliates of CAP.
```

ANSWER:

38.    TPDs lack knowledge and information sufficient to allow them to form a belief about

the truth of the allegations of Paragraph 38.

```
39.  Notices of the assignments were provided to Catch 26, Gas
Cap and Grayslake on or about August 17, 2016. See Grayslake
Notice of Assignment (Exhibit O); Woodstock Notice of
Assignment (Exhibit P); and Ingleside Notice of Assignment
(Exhibit Q).
```

ANSWER:

39.    TPDs admit the allegations of Paragraph 39.

```
40.  At or about the same time, in September 2016, BAPA, L.L.C.
and PT, L.L.C. conveyed the Ingleside Property to LGP Realty.
See Ingleside Special Warranty Deed (Exhibit R).
```

ANSWER:

40.    TPDs lack knowledge and information sufficient to allow them to form a belief about

the truth of the allegations of Paragraph 40.

## II. The Dispute

41. On July 5, 2017, Catch 26 had an open balance for rent and other related charges with respect to the Woodstock Property of $6,564.80, which included: (1) Stenstrom Petroleum Sales & Services in the amount of $2,125.00 for repairs at the Property for which Catch 26 was responsible (charged June 9, 2017); (2) rent in the amount of $2,000.00 (charged July 1, 2017); and (3) estimated real estate taxes in the amount of $2,439.80 (charged July 1, 2017).

ANSWER:

41.     TPDs admit the allegations of Paragraph 41, except that TPDs deny that the Stenstrom

Petroleum repair invoice was properly charged to them as it was contractually not their responsibility.

42. On July 5, 2017, Catch 26's pre-a (sic.) outstanding balance in the amount of $6,564.80; however, there were insufficient funds to satisfy the draft, the draft was returned and, as a result, the Woodstock property was placed on hold.

ANSWER:

42.     TPDs deny the allegations of Paragraph 42.  The charge was refused by TPDs' financial

institution due to the improper charges.  Accordingly the "hold" by Third Party Plaintiffs ("TPPs")

was also improper.

43. Catch 26 never remitted funds to satisfy the open balance at the Woodstock Property.

ANSWER:

43.     TPDs deny the allegations of Paragraph 43 specifically alleging that TPDs are and have

been entitles to significant credits from TPPs for real estate tax payments made above the actual taxes

levied, for rebates and for other monetary obligations of the TPPs.

44. Shortly thereafter, Catch 26 started purchasing petroleum product from one or more suppliers at the Woodstock Property in breach of the Woodstock Supply Agreement and, upon

```
information and belief, continues to do so until the present
time.
```

ANSWER:

44.     TPDs admit the allegations of Paragraph 44, but specifically deny that their purchase

of petroleum products from another source was a breach of the Agreement.  Rather, the purchase of

petroleum products from another source was and is caused by TPPs' wrongful and unilateral refusal

to supply such products to TPDs.

```
45.  In addition, with respect to the Woodstock Property, on
or about August 9, 2017, Lehigh learned that Catch 26 had
changed its banking information with Petroleum Card Services
("PCS") so that credit card payments would no longer go
directly to Lehigh in breach of the Woodstock Supply Agreement
and, as a result, Lehigh stopped receiving credit card credits.
```

ANSWER:

45.     TPDs admit the allegations of Paragraph 45, but specifically deny that their change in

banking was a breach of the Agreement.  Rather, the change in banking was caused by and a direct

result of TPPs' wrongful and unilateral refusal to supply petroleum products to TPDs.

```
46.  With respect to the Ingleside Property, on August 5, 2017,
Catch 26 had an open balance for rent and other related charges
of $17,208.90, which included: (1) Excel invoice for EMV
Equipment in the amount of $11,051.70 (charged June 30, 2017);
(2) real estate taxes in the amount of $1,353.13 (charged
August 1, 2017); and (3) monthly payment required under the
Ingleside Installment Agreement in the amount of $4,804.07
(charged August 1, 2017).
```

ANSWER:

46.     TPDs admit the allegations of Paragraph 46, except that TPDs deny that the Excel

invoice was properly charged to them as it was well in excess of the amount quoted for the equipment

to be supplied thereunder, nor had that equipment been supplied and/or installed.  Accordingly, that

invoice was not due top be paid in any event.

```
47.  On August 5, 2017, Catch 26's pre-a (sic.)
outstanding balance for the Ingleside Property in the amount
of $17,208.90; however, there were insufficient funds to
satisfy the draft, the draft bounced and, as a result, on or
about August 10, 2017, Catch 26's Ingleside account was placed
on hold. See August 10, 2017 Email (Exhibit S).
```

ANSWER:

      47.     TPDs deny the allegations of Paragraph 47. The charge was refused by TPDs' financial institution due to the improper charges. Accordingly the "hold" by Third Party Plaintiffs ("TPPs") was also improper.

```
48.  Catch 26 never remitted funds to satisfy the open balance
at the Ingleside Property.
```

ANSWER:

      48.     TPDs deny the allegations of Paragraph 48 specifically alleging that TPDs are and have been entitles to significant credits from TPPs for real estate tax payments made above the actual taxes levied, for rebates and for other monetary obligations of the TPPs.

```
49.  Shortly thereafter, Catch 26 started purchasing petroleum
product from one or more suppliers at the Ingleside Property
in breach of the Ingleside Supply Agreement and, upon
information and belief, continues to do so until the present
time.
```

ANSWER:

      49.     TPDs admit the allegations of Paragraph 49, but specifically deny that their purchase of petroleum products from another source was a breach of the Agreement. Rather, the purchase of petroleum products from another source was and is caused by TPPs' wrongful and unilateral refusal to supply such products to TPDs.

```
50.  With respect to the Grayslake Property, on August 4, 2017,
Grayslake Stop & Shop had an open balance for motor fuel
receivables totaling $40,562.44.
```

ANSWER:

50.    TPDs deny the allegations of Paragraph 50 specifically alleging that TPDs are and have been entitles to significant credits from TPPs for real estate tax payments made above the actual taxes levied, for rebates and for other monetary obligations of the TPPs.

```
    51.  On August 4, 2017, Grayslake Stop & Shop's pre-a (sic.)

        .   Shortly thereafter, Grayslake Stop & Shop started
    purchasing petroleum product from one or more suppliers at the
    Grayslake Property in breach of the Grayslake Supply Agreement
    and, upon information and belief, continues to do so until the
    present time.
```

ANSWER:

51.    TPDs admit the allegations of Paragraph 51, but specifically deny that their purchase of petroleum products from another source was a breach of the Agreement.  Rather, the purchase of petroleum products from another source was and is caused by TPPs' wrongful and unilateral refusal to supply such products to TPDs.

```
    54.  In addition, with respect to the Grayslake Property, on
    or about August 9, 2017, Lehigh learned that Grayslake Stop &
    Shop had changed its banking information with PCS so that
    credit card payments would no longer go directly to Lehigh in
    breach of the Grayslake Supply Agreement and, as a result,
    Lehigh stopped receiving credit card credits.
```

ANSWER:

54.    TPDs admit the allegations of Paragraph 45, but specifically deny that their change in banking was a breach of the Agreement.  Rather, the change in banking was caused by and a direct result of TPPs' wrongful and unilateral refusal to supply petroleum products to TPDs.

```
    55.  Based on the foregoing, on August 14, 2017, Alani, Gas
    Cap, Catch 26 and Grayslake Stop & Shop (Gas Cap, Catch 26 and
    Grayslake Stop & Shop are collectively "Alani's Operating
    Entities") were provided due notice that the Ingleside,
```

14

Woodstock and Grayslake Supply Agreements as well as the Woodstock and Grayslake Leases and the Ingleside Installment Agreement were all terminated.

ANSWER:

55.     TPDs deny the allegations of Paragraph 55.

56.     The August 14, 2017 Notice of Termination was served by hand delivery as well as by certified mail, return receipt requested and the effective date of the termination was August 25, 2017 ("Initial Termination Date"). See August 14, 2017 Notice of Termination (Exhibit T).

ANSWER:

56.     TPDs admit receipt of said notice but deny the legal propriety of the same based upon

TPPs' prior breaches of the various agreements at issue in this matter.

57.     Between the time that the Notice of Termination was served and the Termination Date, Alani's Operating Entities continued to default in their obligations to Lehigh by failing to make timely payments to Lehigh and continuing to sell gasoline purchased from one or more third-party suppliers at all three Properties in violation of the Supply Agreements and, at the Ingleside Property, Lehigh's trademark rights.

ANSWER:

57.     TPDs deny the allegations of Paragraph 57.

58.     Based on the foregoing, on October 5, 2017, Alani and Alani's Operating Entities were provided with supplemental notice that the Ingleside Supply Agreement and Installment Agreement were all terminated.

ANSWER:

58.     TPDs admit receipt of said notice but deny the legal propriety and/or effect of the same

based upon TPPs' prior breaches of the various agreements at issue in this matter and the pendency

of TPDs' underlying Complaint.

59.    The October 5, 2017 Notice of Termination was served by hand delivery as well as by electronic mail to Plaintiffs' counsel and the effective date of the termination was October 27, 2017 ("Second Termination Date"). See October 5, 2017 Notice of Termination (Exhibit U).

ANSWER:

59.    TPDs admit receipt of said notice but deny the legal propriety and/or effect of the same based upon TPPs' prior breaches of the various agreements at issue in this matter and the pendency of TPDs' underlying Complaint.

60.    On October 30, 2017, Alani and Alani's Operating Entities were provided with another supplemental notice that the Ingleside Supply Agreement and Installment Agreement were all terminated.

ANSWER:

60.    TPDs admit receipt of said notice but deny the legal propriety and/or effect of the same based upon TPPs' prior breaches of the various agreements at issue in this matter and the pendency of TPDs' underlying Complaint.

61.    The October 30, 2017 Notice of Termination was served by hand delivery as well as by certified mail, return receipt requested and the effective date of the termination was November 10, 2017 ("Third Termination Date"). See October 30, 2017 Notice of Termination (Exhibit V).

ANSWER:

61.    TPDs admit receipt of said notice but deny the legal propriety and/or effect of the same based upon TPPs' prior breaches of the various agreements at issue in this matter and the pendency of TPDs' underlying Complaint.

62.    Catch 26 currently owes Lehigh $ 478.45 at the Ingleside Property.

ANSWER:

62.     TPDs deny the allegations of Paragraph 62.

63.  Catch  26  currently  owes  Lehigh  $  22,192.20  at  the
Woodstock Property.

ANSWER:

63.     TPDs deny the allegations of Paragraph 63.

64.  Grayslake  Stop  &  Shop  currently  owes  Lehigh  $  26,909.32
at the Grayslake Property.

ANSWER:

64.     TPDs deny the allegations of Paragraph 64.

**III. Jurisdiction**

65.  This  Court  has  jurisdiction  over  the  claims  at  the
Ingleside  Property  pursuant  to  28  U.S.C.  §1331  as  a  federal
question  arises  under  the  Petroleum  Marketing  Practice  Act,  15
U.S.C. §2801 et seq. ("PMPA"), as well as other claims arising
under  the  Constitution  and  laws  and  statutes  of  the  United
States.

ANSWER:

65.     TPDs admit the allegations of Paragraph 65.

66.  This Court has ancillary and/or supplemental jurisdiction
over  Lehigh's  state  law  counterclaims  relating  to  the  Grayslake
Property  and  Woodstock  Property,  which  are  compulsory.

ANSWER:

66.     TPDs deny the allegations of Paragraph 66.

67.  Venue  is  proper  in  this  District  pursuant  to  28  U.S.C.  §
1391(a),  (b)  and  (c)  because  a  substantial  part  of  the  events
giving  rise  to  the  claims  occurred  in  this  District.

ANSWER:

67.     TPDs admit the allegations of Paragraph 67.

68.  The controversies in this case are justiciable, capable of disposition and Lehigh has a personal stake in the outcome.

ANSWER:

68.    TPDs admit the allegations of Paragraph 68.

**COUNT I**
**Breach of Contract:**
**The Ingleside Supply and Installment Agreements**

69.  Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

69.    As and for their Answer to Paragraph 69, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

70.  Catch 26 and Gas Cap's failure to remit amounts owed to Lehigh when due with respect to the Ingleside Property constitutes a material breach of the Ingleside Supply and Installment Agreements.

ANSWER:

70.    TPDs deny the allegations of Paragraph 70.

71.  By virtue of Catch 26 and Gas Cap's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

ANSWER:

71.    TPDs deny the allegations of Paragraph 71.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count I of their Counterclaim, and provide to TPDs' favor al l further relief as is just and equitable.

## COUNT II
## Breach of Contract:
## The Woodstock Supply and Lease Agreements

72. Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

72. As and for their Answer to Paragraph 72, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

73. Catch 26's failure to remit amounts owed to Lehigh when due with respect to the Woodstock Property constitutes a material breach of the Woodstock Supply and Lease Agreements.

ANSWER:

73. TPDs deny the allegations of Paragraph 73.

74. By virtue of Catch 26's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

ANSWER:

74. TPDs deny the allegations of Paragraph 74.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count II of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

## COUNT III
## Breach of Contract:
## The Grayslake Supply and Lease Agreements

75. Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

19

ANSWER:

75.     As and for their Answer to Paragraph 75, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

76.  Grayslake Stop & Shop's failure to remit amounts owed to Lehigh when due with respect to the Grayslake Property constitutes a material breach of the Grayslake Supply and Lease Agreements.

ANSWER:

76.     TPDs deny the allegations of Paragraph 76.

77.  By virtue of Grayslake Stop & Shop's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

ANSWER:

77.     TPDs deny the allegations of Paragraph 77.

Wherefore, the Third Party Defendants,  Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count III of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

## COUNT IV
## Breach of Contract:
## The Ingleside Supply and Installment Agreements

78.  Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

78.     As and for their Answer to Paragraph 78, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

79. Catch 26 and Gas Cap's sale of gasoline at the Ingleside Property that was not purchased from Lehigh constitutes a material breach of the Ingleside Supply and Installment Agreements.

ANSWER:

79. TPDs deny the allegations of Paragraph 79.

80. By virtue of Catch 26 and Gas Cap's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

ANSWER:

80. TPDs deny the allegations of Paragraph 80.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count IV of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

## COUNT V
### Breach of Contract:
### The Woodstock Supply and Lease Agreements

81. Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

81. As and for their Answer to Paragraph 81, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

82. Catch 26's sale of gasoline at the Woodstock Property that was not purchased from Lehigh constitutes a material breach of the Woodstock Supply and Lease Agreements.

ANSWER:

82. TPDs deny the allegations of Paragraph 82.

21

83.  By virtue of Catch 26's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

ANSWER:

83.    TPDs deny the allegations of Paragraph 83.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count V of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

## COUNT VI
## Breach of Contract:
## Grayslake Supply and Lease Agreements

84.  Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

84.    As and for their Answer to Paragraph 84, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

85.  Grayslake Stop & Shop's sale of gasoline at the Grayslake Property that was not purchased from Lehigh constitutes a material breach of the Grayslake Supply and Lease Agreements.

ANSWER:

85.    TPDs deny the allegations of Paragraph 85.

86.  By virtue of Grayslake Stop & Shop's material breach, Defendants have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

ANSWER:

22

86.     TPDs deny the allegations of Paragraph 86.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop

& Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third

Party Plaintiffs through Count VI of their Counterclaim, and provide to TPDs' favor all further relief

as is just and equitable.

<u>**COUNT VII**</u>
<u>**Trademark Violations:**</u>
<u>**The Ingleside Property**</u>

87.  Defendants  reallege  and  incorporate  by  reference
Paragraphs 1 to 68 as if set forth herein.

<u>ANSWER</u>:

87.     As and for their Answer to Paragraph 87, TPDs reallege and incorporate by this

reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

88.  Since at least August 16, 2017, Catch 26 has been and
continues to sell non-Marathon branded gasoline under the
Marathon trademark at the Ingleside Property.

<u>ANSWER</u>:

88.     TPDs deny the allegations of Paragraph 88.

89.  Catch 26's sale of non-Marathon branded gasoline under the
Marathon  trademark  at  the  Property  is  a  material  breach
Marathon's federal and state trademark rights

<u>ANSWER</u>:

89.     TPDs deny the allegations of Paragraph 89.

90.  By  selling  non-Marathon  branded  gasoline  under  the
Marathon  trademark,  Catch  26  is  perpetrating  a  fraud  on  the
public.

<u>ANSWER</u>:

90.     TPDs deny the allegations of Paragraph 90.

91.     Lehigh has the right to use Marathon's trademarks.

ANSWER:

91.     TPDs lack knowledge and information sufficient to allow them to form a belief about the truth of the allegations of Paragraph 91.

92.     Lehigh has the obligation to protect Marathon's trademarks.

ANSWER:

92.     TPDs lack knowledge and information sufficient to allow them to form a belief about the truth of the allegations of Paragraph 92.

93.     By virtue of Catch 26's trademark violation, Lehigh has been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdictional limit of this Court.

ANSWER:

93.     TPDs deny the allegations of Paragraph 93.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count VII of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

## COUNT VIII
## Declaratory Judgment:
## Proper Termination of the Ingleside Agreements on August 14, 2017

94.     Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

94.     As and for their Answer to Paragraph 94, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

```
95.  Catch 26 has failed to exert good faith efforts to carry
out and is in breach of its obligations under the Ingleside
Supply and Installment Agreements, the terms and conditions of
which are both reasonable and of material significance to the
relationships thereunder.
```

ANSWER:

95.     TPDs deny the allegations of Paragraph 95.

```
96.  Accordingly, on August 14, 2017, Lehigh delivered to Catch
26 and Louay Alani a Notice of Termination, which indicated
that the Ingleside Agreements would terminate on August 25,
2017.
```

ANSWER:

96.     TPDs admit receipt of said notice but deny the legal propriety of the same based upon TPPs' prior breaches of the various agreements at issue in this matter.

```
97.  The August 14, 2017 Notice of Termination contained: (1)
a statement of the intention of Lehigh to terminate the
Ingleside Agreements; (2) the reason for termination; (3) t
(sic.)   (4) a summary of the provisions of Title I of the Act
which was prepared and published by the Secretary of Energy
pursuant to PMPA §2804(d)(1).
```

ANSWER:

97.     TPDs admit receipt of said notice but deny the legal propriety of the same based upon TPPs' prior breaches of the various agreements at issue in this matter.

```
98.  The aforestated acts of Catch 26 constituted the
occurrence of events relevant to the Ingleside Agreements as
a result of which termination was warranted, justified,
reasonable and permitted under the parties' relevant agreements
as well as pursuant to the PMPA.
```

ANSWER:

98.     TPDs deny the allegations of Paragraph 98.

99.  By virtue of the foregoing, Lehigh's termination of its relationship with Catch 26 effective August 25, 2017 was valid and proper.

ANSWER:

99.     TPDs deny the allegations of Paragraph 99.

100. Catch 26 has refused to vacate the Ingleside Property and, as such, has refused to recognize the validity of the August 14, 2017 Notice of Termination.

ANSWER:

100.    TPDs admit the allegations of Paragraph 100, and further allege that the referenced

notice was not and is not legally valid.

101. Lehigh is without any adequate remedy at law.

ANSWER:

101.    TPDs deny the allegations of Paragraph 101.

102. Based upon the foregoing, Lehigh is entitled to an Order declaring the lawfulness of the August 14, 2017 termination of the Ingleside Agreements pursuant to the terms of the Ingleside Agreements as well as the PMPA.

ANSWER:

102.    TPDs deny the allegations of Paragraph 102.

Wherefore, the Third Party Defendants,  Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop

& Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third

Party Plaintiffs through Count VIII of their Counterclaim, and provide to TPDs' favor all further relief

as is just and equitable.

26

## COUNT IX
## Declaratory Judgment:
## Proper Termination of the Ingleside Agreements on October 5, 2017

103. Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

103.    As and for their Answer to Paragraph 103, TPDs reallege and incorporate by this

reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

104. Catch 26 has failed to exert good faith efforts to carry out and is in breach of its obligations under the Ingleside Supply and Installment Agreements, the terms and conditions of which are both reasonable and of material significance to the relationships thereunder.

ANSWER:

104.    TPDs deny the allegations of Paragraph 104.

105. Accordingly, on October 5, 2017, Lehigh delivered to Catch 26 and Louay Alani a supplemental Notice of Termination, which indicated that the Ingleside Agreements would terminate on October 27, 2017.

ANSWER:

105.    TPDs admit receipt of said notice but deny the legal propriety of the same based upon

TPPs' prior breaches of the various agreements at issue in this matter.

106. The October 5, 2017 Notice of Termination contained: (1) a statement of the intention of Lehigh to terminate the Ingleside Agreements; (2) t   (3) the date on which termination was to take effect; and (4) a summary of the provisions of Title I of the Act which was prepared and published by the Secretary of Energy pursuant to PMPA §2804(d)(1).

ANSWER:

27

106.     TPDs admit receipt of said notice but deny the legal propriety of the same based upon

TPPs' prior breaches of the various agreements at issue in this matter.

107. The aforestated acts of Catch 26 constituted the
occurrence of events relevant to the Ingleside Agreements as
a result of which termination was warranted, justified,
reasonable and permitted under the parties' relevant agreements
as well as pursuant to the PMPA.

ANSWER:

107.     TPDs deny the allegations of Paragraph 107.

108. By virtue of the foregoing, Lehigh's termination of its
relationship with Catch 26 effective October 27, 2017 was valid
and proper.

ANSWER:

108.     TPDs deny the allegations of Paragraph 108.

109. Catch 26 has refused to vacate the Ingleside Property and,
as such, has refused to recognize the validity of the October
5, 2017 Notice of Termination.

ANSWER:

109.     TPDs admit the allegations of Paragraph 109, and further allege that the referenced

notice was not and is not legally valid.

110. Lehigh is without any adequate remedy at law.

ANSWER:

110.     TPDs deny the allegations of Paragraph 110.

111. Based upon the foregoing, Lehigh is entitled to an Order
declaring the lawfulness of the October 5, 2017 termination of
the Ingleside Agreements pursuant to the terms of the Ingleside
Agreements as well as the PMPA.

ANSWER:

111.     TPDs deny the allegations of Paragraph 111.

28

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count IX of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

<div align="center">

**COUNT X**
**Declaratory Judgment:**
**Proper Termination of the Ingleside Agreements on October 30, 2017**

</div>

```
112. Defendants reallege and incorporate by reference
Paragraphs 1 to 68 as if set forth herein.
```

ANSWER:

112.    As and for their Answer to Paragraph 112, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

```
113. Catch 26 has failed to exert good faith efforts to carry
out and is in breach of its obligations under the Ingleside
Supply and Installment Agreements, the terms and conditions of
which are both reasonable and of material significance to the
relationships thereunder.
```

ANSWER:

113.    TPDs deny the allegations of Paragraph 113.

```
114. Accordingly, on October 30, 2017, Lehigh delivered to
Catch 26 and Louay Alani a supplemental Notice of Termination,
which indicated that the Ingleside Agreements would terminate
on November 10, 2017.
```

ANSWER:

114.    TPDs admit receipt of said notice but deny the legal propriety of the same based upon TPPs' prior breaches of the various agreements at issue in this matter.

```
115. The October 30, 2017 Notice of Termination contained: (1)
a statement of the intention of Lehigh to terminate the
```

Ingleside Agreements; (2) the reason for termination; (3) the date on which termination was to take effect; and (4) a summary of the provisions of Title **I** of the Act which was prepared and published by the Secretary of Energy pursuant to PMPA §2804(d)(1).

ANSWER:

115.    TPDs admit receipt of said notice but deny the legal propriety of the same based upon

TPPs' prior breaches of the various agreements at issue in this matter.

116. The aforestated acts of Catch 26 constituted the occurrence of events relevant to the Ingleside Agreements as a result of which termination was warranted, justified, reasonable and permitted under the parties' relevant agreements as well as pursuant to the PMPA.

ANSWER:

116.    TPDs deny the allegations of Paragraph 116.

117. By virtue of the foregoing, Lehigh's termination of its relationship with Catch 26 effective November 10, 2017 was valid and proper.

ANSWER:

117.    TPDs deny the allegations of Paragraph 117.

118. Catch 26 has refused to vacate the Ingleside Property and, as such, has refused to recognize the validity of the October 30, 2017 Notice of Termination.

ANSWER:

118.    TPDs admit the allegations of Paragraph 118, and further allege that the referenced

notice was not and is not legally valid.

119. Lehigh is without any adequate remedy at law.

ANSWER:

119.    TPDs deny the allegations of Paragraph 119.

120. Based upon the foregoing, Lehigh is entitled to an Order declaring the lawfulness of the October 30, 2017 termination of the Ingleside Agreements pursuant to the terms of the Ingleside Agreements as well as the PMPA.

ANSWER:

120.    TPDs deny the allegations of Paragraph 120.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count X of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

## COUNT XI
### Declaratory Judgment:
### Proper Termination of the Woodstock Agreements

121. Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

121.    As and for their Answer to Paragraph 121, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

122. Catch 26 has failed to exert good faith efforts to carry out and is in breach of its obligations under the Woodstock Supply and Lease Agreements, the terms and conditions of which are both reasonable and of material significance to the relationships thereunder.

ANSWER:

122.    TPDs deny the allegations of Paragraph 122.

123. Accordingly, on August 14, 2017, Lehigh delivered to Catch 26 and Louay Alani a Notice of Termination, which indicated that the Woodstock Agreements would terminate on August 25, 2017.

ANSWER:

31

123.    TPDs admit receipt of said notice but deny the legal propriety of the same based upon

TPPs' prior breaches of the various agreements at issue in this matter.

124. The August 14, 2017 Notice of Termination contained: (1)
a statement of the intention of Lehigh to terminate the
Ingleside Agreements; (2) t  (3) the
date on which termination was to take effect; and (4) a summary
of the provisions of Title I of the Act which was prepared and
published by the Secretary of Energy pursuant to PMPA
§2804(d)(1).

ANSWER:

124.    TPDs admit receipt of said notice but deny the legal propriety of the same based upon

TPPs' prior breaches of the various agreements at issue in this matter.

125. The aforestated acts of Catch 26 constituted the
occurrence of events relevant to the Woodstock Agreements as
a result of which termination was warranted, justified,
reasonable and permitted under the parties' relevant
agreements.

ANSWER:

125.    TPDs deny the allegations of Paragraph 125.

126. Despite the fact that the PMPA did not and does not govern
the Woodstock Agreements, the aforestated acts of Catch 26
constituted the occurrence of events relevant to the Woodstock
Agreements as a result of which termination was warranted,
justified, reasonable and permitted under the PMPA.

ANSWER:

126.    TPDs deny the allegations of Paragraph 126.

127. By virtue of the foregoing, Lehigh's termination of its
relationship with Catch 26 effective August 25, 2017 was valid
and proper.

ANSWER:

127.    TPDs deny the allegations of Paragraph 127.

```
128. Catch 26 has refused to vacate the Woodstock Property and,
as such, has refused to recognize the validity of the August
14, 2017 Notice of Termination.
```

ANSWER:

128.    TPDs admit the allegations of Paragraph 128, and further allege that the referenced

notice was not and is not legally valid.

```
129. Lehigh is without any adequate remedy at law.
```

ANSWER:

129.    TPDs deny the allegations of Paragraph 129.

```
130. Based upon the foregoing, Lehigh is entitled to an Order
declaring the lawfulness of the termination the Woodstock
Agreements pursuant to the terms of the Woodstock Agreements
as well as the PMPA.
```

ANSWER:

130.    TPDs deny the allegations of Paragraph 130.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop

& Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third

Party Plaintiffs through Count XI of their Counterclaim, and provide to TPDs' favor all further relief

as is just and equitable.

<div align="center">

**COUNT XII**
**Declaratory Judgment:**
**Proper Termination of the Grayslake Agreements**

</div>

```
131. Defendants realleges and incorporate by reference
Paragraphs 1 to 68 as if set forth herein.
```

ANSWER:

131.    As and for their Answer to Paragraph 131, TPDs realleges and incorporate by this

reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

132. Grayslake Stop & Shop has failed to exert good faith efforts to carry out and is in breach of its obligations under the Grayslake Supply and Lease Agreements, the terms and conditions of which are both reasonable and of material significance to the relationships thereunder.

ANSWER:

132.    TPDs deny the allegations of Paragraph 132.

133. Accordingly, on August 14, 2017, Lehigh delivered to Grayslake Stop & Shop and Louay Alani a Notice of Termination, which indicated that the Grayslake Agreements would terminate on August 25, 2017.

ANSWER:

133.    TPDs admit receipt of said notice but deny the legal propriety of the same based upon

TPPs' prior breaches of the various agreements at issue in this matter.

134. The August 14, 2017 Notice of Termination contained: (1) a statement of the intention of Lehigh to terminate the Ingleside Agreements; (2) t   (3) the date on which termination was to take effect; and (4) a summary of the provisions of Title I of the Act which was prepared and published by the Secretary of Energy pursuant to PMPA §2804(d)(1).

ANSWER:

134.    TPDs admit receipt of said notice but deny the legal propriety of the same based upon

TPPs' prior breaches of the various agreements at issue in this matter.

135. The aforestated acts of Grayslake Stop & Shop constituted the occurrence of events relevant to the Grayslake Agreements as a result of which termination was warranted, justified, reasonable and permitted under the parties' relevant agreements.

ANSWER:

135.    TPDs deny the allegations of Paragraph 135.

136. Despite the fact that the PMPA did not and does not govern the Grayslake Agreements, the aforestated acts of Grayslake

34

Stop & Shop constituted the occurrence of events relevant to the Grayslake Agreements as a result of which termination was warranted, justified, reasonable and permitted under the PMPA.

ANSWER:

136.     TPDs deny the allegations of Paragraph 136.

137. By virtue of the foregoing, Lehigh's termination of its relationship with Grayslake Stop & Shop effective August 25, 2017 was valid and proper.

ANSWER:

137.     TPDs deny the allegations of Paragraph 137.

138. Grayslake Stop & Shop has refused to vacate the Grayslake Property and, as such, has refused to recognize the validity of the August 14, 2017 Notice of Termination.

ANSWER:

138.     TPDs admit the allegations of Paragraph 138, and further allege that the referenced

notice was not and is not legally valid.

139. Lehigh is without any adequate remedy at law.

ANSWER:

139.     TPDs deny the allegations of Paragraph 139.

140. Based upon the foregoing, Lehigh is entitled to an Order declaring the lawfulness of the termination the Grayslake Agreements pursuant to the terms of the Grayslake Agreements as well as the PMPA.

ANSWER:

140.     TPDs deny the allegations of Paragraph 140.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop

& Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third

Party Plaintiffs through Count XII of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

<div align="center">

**COUNT XIII**
**Trespass:**
**The Ingleside Property**

</div>

141. Defendants reallege and incorporate by reference Paragraphs 1 to 187 (sic.) as if set forth herein.

ANSWER:

141.     As and for their Answer to Paragraph 141, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

142. The Ingleside Supply and Installment Agreements were terminated on August 25, 2017, at which time Catch 26 and Gas Cap were immediately required to vacate the Ingleside Property.

ANSWER:

142.     TPDs deny the allegations of Paragraph 142.

143. Catch 26 and Gas Cap intentionally failed to vacate the Ingleside Property.

ANSWER:

143.     TPDs deny the allegations of Paragraph 143.

144. To date, Catch 26 and Gas Cap have intentionally remained and continue to intentionally remain on the Ingleside Property without authorization or permission, in violation of the Ingleside Supply and Installment Agreements.

ANSWER:

144.     TPDs deny the allegations of Paragraph 144.

145. As a result of Catch 26's continuing act of trespass, Lehigh has been damaged and will continue to suffer damages for as long as Catch 26 remains wrongfully at the Ingleside Property in an amount yet to be finally determined but, in no case, less that the jurisdictional limit of this Court.

ANSWER:

     145.    TPDs deny the allegations of Paragraph 145.

     Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count XIII of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

## COUNT XIV
## Trespass:
## The Woodstock Property

146. Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

     146.    As and for their Answer to Paragraph 146, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

147. The Woodstock Supply and Lease Agreements were terminated on August 25, 2017, at which time Catch 26 was immediately required to vacate the Woodstock Property.

ANSWER:

     147.    TPDs deny the allegations of Paragraph 147.

148. Catch 26 intentionally failed to vacate the Woodstock Property.

ANSWER:

     148.    TPDs deny the allegations of Paragraph 148.

149. To date, Catch 26 has intentionally remained and continues to intentionally remain on the Woodstock Property without authorization or permission, in violation of the Woodstock Supply and Lease Agreements.

ANSWER:

149.    TPDs deny the allegations of Paragraph 149.

150. As a result of Catch 26's continuing act of trespass, Lehigh has been damaged and will continue to suffer damages for as long as Catch 26 remains wrongfully at the Woodstock Property in an amount yet to be finally determined but, in no case, less that the jurisdictional limit of this Court.

ANSWER:

150.    TPDs deny the allegations of Paragraph 150.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count XIV of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

**COUNT XV**
**Trespass:**
**The Grayslake Property**

151. Defendants reallege and incorporate by reference Paragraphs 1 to 196 (sic.) as if set forth herein.

ANSWER:

151.    As and for their Answer to Paragraph 151, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

152. The Grayslake Supply and Lease Agreements were terminated on August 25, 2017, at which time Grayslake Stop & Shop was immediately required to vacate the Grayslake Property.

ANSWER:

152.    TPDs deny the allegations of Paragraph 152.

153. Grayslake Stop & Shop intentionally failed to vacate the Grayslake Property.

ANSWER:

153.    TPDs deny the allegations of Paragraph 153.

154. To date, Grayslake Stop & Shop has intentionally remained and continues to intentionally remain on the Grayslake Property without authorization or permission, in violation of the Graysla  ly (sic.) and Lease Agreements.

ANSWER:

154.    TPDs deny the allegations of Paragraph 154.

155. As a result of Grayslake Stop & Shop's continuing act of trespass, Lehigh has been damaged and will continue to suffer damages for as long as Grayslake Stop & Shop remains wrongfully at the Grayslake Property in an amount yet to be finally determined but, in no case, less that the jurisdictional limit of this Court.

ANSWER:

155.    TPDs deny the allegations of Paragraph 155.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count XV of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

## COUNT XVI
### State Law Claims for Eviction and Ejectment:
### The Ingleside Property

156. Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

156.    As and for their Answer to Paragraph 156, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

157. Lehigh properly terminated the Ingleside Supply and Installment Agreements.

ANSWER:

157.    TPDs deny the allegations of Paragraph 157.

158. The Ingleside Agreements specified that, upon termination of the agreements, Catch 26 would vacate the Ingleside Property immediately.

ANSWER:

158.    TPDs deny the allegations of Paragraph 158 to the extent that any of them contradict the plain terms of the Agreements referenced, and further deny that TPPs' termination of the same was legal or otherwise proper and appropriate.

159. Lehigh is, therefore, entitled to immediate possession of the Ingleside Property.

ANSWER:

159.    TPDs deny the allegations of Paragraph 159.  Further, TPPs have not complied with terms of the Illinois Forcible Entry and Detainer laws, 735 ILCS 5/9-101, *et seq.*, and therefore are not entitled to the relief sought.

160. Lehigh is without any adequate remedy at law.

ANSWER:

160.    TPDs deny the allegations of Paragraph 150.

161. Based on the foregoing, Lehigh is entitled to a warrant mandating the ejectment and eviction of Catch 26, its agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with it from the Ingleside Property.

ANSWER:

161.    TPDs deny the allegations of Paragraph 161.

40

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count XVI of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

### COUNT XVII
### State Law Claims for Eviction and Ejectment:
### The Woodstock Property

162. Defendants realleg and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

162.    As and for their Answer to Paragraph 162, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

163. Lehigh properly terminated the Woodstock Supply and Lease Agreements.

ANSWER:

163.    TPDs deny the allegations of Paragraph 163.

164. The Woodstock Agreements specified that, upon termination of the agreements, Catch 26 would vacate the Woodstock Property immediately.

ANSWER:

164.    TPDs deny the allegations of Paragraph 164 to the extent that any of them contradict the plain terms of the Agreements referenced, and further deny that TPPs' termination of the same was legal or otherwise proper and appropriate.

165. Lehigh is, therefore, entitled to immediate possession of the Woodstock Property.

ANSWER:

165.    TPDs deny the allegations of Paragraph 165.  Further, TPPs have not complied with terms of the Illinois Forcible Entry and Detainer laws, 735 ILCS 5/9-101, *et seq.*, and therefore are not entitled to the relief sought.

166. Lehigh is without any adequate remedy at law.

ANSWER:

166.    TPDs deny the allegations of Paragraph 166.

167. Based on the foregoing, Lehigh is entitled to a warrant mandating the ejectment and eviction of Catch 26, its agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with it from the Woodstock Property.

ANSWER:

167.    TPDs deny the allegations of Paragraph 167.

Wherefore, the Third Party Defendants,  Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count XVII of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

**COUNT XVIII
State Law Claims for Eviction and Ejectment:
The Grayslake Property**

168. Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

168.    As and for their Answer to Paragraph 168, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

169. Lehigh properly terminated the Grayslake Supply and Lease Agreements.

42

ANSWER:

    169.    TPDs deny the allegations of Paragraph 169.

    170. The Grayslake Agreements specified that, upon termination of the agreements, Grayslake Stop & Shop would vacate the Grayslake Property immediately.

ANSWER:

    170.    TPDs deny the allegations of Paragraph 170 to the extent that any of them contradict the plain terms of the Agreements referenced, and further deny that TPPs' termination of the same was legal or otherwise proper and appropriate.

    171. Lehigh is, therefore, entitled to immediate possession of the Grayslake Property.

ANSWER:

    171.    TPDs deny the allegations of Paragraph 171.  Further, TPPs have not complied with terms of the Illinois Forcible Entry and Detainer laws, 735 ILCS 5/9-101, *et seq.*, and therefore are not entitled to the relief sought.

    172. Lehigh is without any adequate remedy at law.

ANSWER:

    172.    TPDs deny the allegations of Paragraph 172.

    173. Based on the foregoing, Lehigh is entitled to a warrant mandating the ejectment and eviction of Grayslake Stop & Shop, its agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with it from the Grayslake Property.

ANSWER:

    173.    TPDs deny the allegations of Paragraph 173.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count XVIII of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

<u>**COUNT XIX**</u>
<u>**Preliminary and Permanent Injunction:**</u>
<u>**The Ingleside Property**</u>

174. Defendants realllege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

<u>ANSWER</u>:

174.   As and for their Answer to Paragraph 174, TPDs realllege and incorporate by this reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

175. As a result of the foregoing, Lehigh is likely to succeed on the merits herein.

<u>ANSWER</u>:

175.   TPDs deny the allegations of Paragraph 175.

176. As a result of the foregoing, Lehigh will suffer irreparable harm if Catch 26 and Gas Cap's wrongful conduct is not immediately terminated.

<u>ANSWER</u>:

176.   TPDs deny the allegations of Paragraph 176.

177. As a result of the foregoing, the balancing of the equities are in Lehigh's favor.

<u>ANSWER</u>:

177.   TPDs deny the allegations of Paragraph 177.

178. Lehigh has no adequate remedy at law.

ANSWER:

178.   TPDs deny the allegations of Paragraph 178.

179. Based upon the foregoing, Lehigh is entitled to a
preliminary injunction and temporary restraining order tailored
to prevent it from any additional harm pending the resolution
of this matter including, but not limited, to an Order
enjoining Catch 26 and Gas Cap from selling gasoline at the
Ingleside Property that is not purchased from Lehigh, enjoining
Catch 26 from accessing the gasoline dispensing area of the
Ingleside Property for any purpose and granting to Lehigh
immediate and exclusive possession of the Ingleside Property.

ANSWER:

179.   TPDs deny the allegations of Paragraph 179.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop

& Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third

Party Plaintiffs through Count XIX of their Counterclaim, and provide to TPDs' favor all further relief

as is just and equitable.

### COUNT XX
### Preliminary and Permanent Injunction:
### The Woodstock Property

180. Defendants reallege and incorporate by reference
Paragraphs 1 to 68 as if set forth herein.

ANSWER:

180.   As and for their Answer to Paragraph 180, TPDs reallege and incorporate by this

reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

181. As a result of the foregoing, Lehigh is likely to succeed
on the merits herein.

ANSWER:

181.   TPDs deny the allegations of Paragraph 181.

182. As a result of the foregoing, Lehigh will suffer irreparable harm if Catch 26's wrongful conduct is not immediately terminated.

ANSWER:

182. TPDs deny the allegations of Paragraph 182.

183. As a result of the foregoing, the balancing of the equities are in Lehigh's favor.

ANSWER:

183. TPDs deny the allegations of Paragraph 183.

184. Lehigh has no adequate remedy at law.

ANSWER:

184. TPDs deny the allegations of Paragraph 184.

185. Based upon the foregoing, Lehigh is entitled to a preliminary injunction and temporary restraining order tailored to prevent it from any additional harm pending the resolution of this matter including, but not limited, to an Order enjoining Catch 26 from selling gasoline at the Woodstock Property that is not purchased from Lehigh, enjoining Catch 26 from accessing the gasoline dispensing area of the Woodstock Property for any purpose and granting to Lehigh immediate and exclusive possession of the Woodstock Property.

ANSWER:

185. TPDs deny the allegations of Paragraph 185.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count XX of their Counterclaim, and provide to TPDs' favor all further relief as is just and equitable.

## COUNT XXI
## Preliminary and Permanent In
## The Grayslake Property

186. Defendants reallege and incorporate by reference Paragraphs 1 to 68 as if set forth herein.

ANSWER:

186.    As and for their Answer to Paragraph 186, TPDs reallege and incorporate by this

reference their Answers to Paragraph 1 through 68 herein above as if fully set forth herein.

187. As a result of the foregoing, Lehigh is likely to succeed on the merits herein.

ANSWER:

187.    TPDs deny the allegations of Paragraph 187.

188. As a result of the foregoing, Lehigh will suffer irreparable harm if Grayslake Stop & Shop's wrongful conduct is not immediately terminated.

ANSWER:

188.    TPDs deny the allegations of Paragraph 188.

189. As a result of the foregoing, the balancing of the equities are in Lehigh's favor.

ANSWER:

189.    TPDs deny the allegations of Paragraph 189.

190. Lehigh has no adequate remedy at law.

ANSWER:

190.    TPDs deny the allegations of Paragraph 190.

191. Based upon the foregoing, Lehigh is entitled to a preliminary injunction and temporary restraining order tailored to prevent it from any additional harm pending the resolution of this matter including, but not limited, to an Order enjoining Grayslake Stop & Shop from selling gasoline at the

```
Grayslake Property that is not purchased from Lehigh, enjoining
Grayslake Stop & Shop from accessing the gasoline dispensing
area of the Grayslake Property for any purpose and granting to
Lehigh immediate and exclusive possession of the Grayslake
Property.
```

ANSWER:

191.    TPDs deny the allegations of Paragraph 191.

Wherefore, the Third Party Defendants,  Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop

& Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third

Party Plaintiffs through Count XX of their Counterclaim, and provide to TPDs' favor all further relief

as is just and equitable.

**THIRD-PARTY COMPLAINT**
**COUNT I**
**<u>Breach of Guaranty:</u>**
**<u>The Ingleside Agreements</u>**

```
1.    Third-Party Plaintiffs reallege and incorporate by
reference Paragraphs "1" through "191" of the Defendants (sic.)
Counterclaim as if set forth herein.
```

ANSWER:

1.    As and for their Answer to Paragraph 1, TPDs reallege and incorporate by this

reference their Answers to Paragraph 1 through 191 herein above as if fully set forth herein.

```
2.    Lehigh Gas Wholesale Services, Inc. ("LGW Services") is
a Delaware corporation with its principal place of business in
the Commonwealth of Pennsylvania.
```

ANSWER:

2.    TPDs lack knowledge and information sufficient to allow them to form a belief about

the truth of the allegations of Paragraph 2.

3.    CrossAmerica Partners LP ("CAP") is a Delaware limited partnership with its principal place of business in the Commonwealth of Pennsylvania.

ANSWER:

3.    TPDs lack knowledge and information sufficient to allow them to form a belief about the truth of the allegations of Paragraph 3.

## COUNT I
## Breach of Guaranty:
## The Ingleside Agreements

4.    Third-Party Plaintiffs reallege and incorporate by reference Paragraphs 1 to 3 of Third-Party Plaintiffs Complaint as if set forth herein.

ANSWER:

4.    As and for their Answer to Paragraph 4, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 3 above as if fully set forth herein.

5.    Third-Party Defendants Louay Alani and Ali Alani have failed to satisfy the obligations of Catch 26 and Gas Cap under the Ingleside Agreements.

ANSWER:

5.    TPDs deny the allegations of Paragraph 5.

6.    Based upon all of the foregoing, Louay Alani and Ali Alani are in material breach of the personal guaranties entered into by them.

ANSWER:

6.    TPDs deny the allegations of Paragraph 6.

7.    By virtue of Louay Alani and Ali Alani's material breaches of their personal guaranties, Lehigh has been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less that the jurisdictional limit of this Court.

ANSWER:

      7.      TPDs deny the allegations of Paragraph 7.

      Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop & Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third Party Plaintiffs through Count I of their Third Party Complaint, and provide to TPDs' favor all further relief as is just and equitable.

### COUNT II
### Breach of Guaranty:
### The Woodstock Agreements

    8.  Third-Party Plaintiffs reallege and incorporate by reference Paragraphs 1 to 3 of the Third-Party Complaint as if set forth herein.

ANSWER:

      8.      As and for their Answer to Paragraph 8, TPDs reallege and incorporate by this reference their Answers to Paragraph 1 through 3 above as if fully set forth herein.

    9.  Third-Party Defendants Louay Alani and Ali Alani have failed to satisfy the obligations of Catch 26 under the Woodstock Agreements.

ANSWER:

      9.      TPDs deny the allegations of Paragraph 9.

    10.  Based upon all of the foregoing, Louay Alani and Ali Alani are in material breach of the personal guaranties entered into by them.

ANSWER:

      10.      TPDs deny the allegations of Paragraph 10.

    11.  By virtue of Louay Alani and Ali Alani's material breaches of their personal guaranties, Lehigh has been damaged and will continue to be damaged in an amount which has not yet been

```
finally    determined    but,    in    no    case,    less    that    the
jurisdictional limit of this Court.
```

ANSWER:

11.     TPDs deny the allegations of Paragraph 11.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop

& Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third

Party Plaintiffs through Count II of their Third Party Complaint, and provide to TPDs' favor all further

relief as is just and equitable.

## COUNT III
## Breach of Guaranty:
## The Grayslake Property

```
12.    Third-Party   Plaintiffs   reallege   and   incorporate   by
reference Paragraphs 1 to 3 of the Third-Party Complaint as if
set forth herein.
```

ANSWER:

12.     As and for their Answer to Paragraph 12, TPDs reallege and incorporate by this

reference their Answers to Paragraph 1 through 3 above as if fully set forth herein.

```
13.    Third-Party   Defendants   Louay   Alani   and   Ali   Alani   have
failed  to  satisfy  the  obligations  of  Grayslake  Stop  &  Shop
under the Grayslake Agreements.
```

ANSWER:

13.     TPDs deny the allegations of Paragraph 13.

```
14.  Based upon all of the foregoing, Louay Alani and Ali Alani
are in material breach of the personal guaranties entered into
by them.
```

ANSWER:

14.     TPDs deny the allegations of Paragraph 14.

```
15.   By virtue of Louay Alani and Ali Alani's material breaches
of their personal guaranties, Lehigh has been damaged and will
continue to be damaged in an amount which has not yet been
finally  determined  but,  in  no  case,  less  that  the
jurisdictional limit of this Court.
```

ANSWER:

15.     TPDs deny the allegations of Paragraph 15.

Wherefore, the Third Party Defendants, Catch 26, LLC, Gas Cap Fuels, LLC, Grayslake Stop

& Shop, LLC, Louay Alani and Ali Alani, pray that this Court deny any and all relief sought by Third

Party Plaintiffs through Count II of their Third Party Complaint, and provide to TPDs' favor all further

relief as is just and equitable.

<div style="margin-left:50%">

Catch 26, LLC, Gas Cap Fuels, LLC,
Grayslake Stop & Shop, LLC, Louay
Alani and Ali Alani

By:  ___/s/ Timothy C. Culbertson___
            Their Attorney

</div>

Timothy C. Culbertson
ARDC No. 6229083
P.O. Box 677
Cary, Illinois 60013
(847) 913-5945
tcculb@gmail.com