**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CATCH 26, LLC, an Illinois Limited Liability Company, GAS CAP FUELS, LLC, an Illinois Limited Liability Company and GRAYSLAKE STOP & SHOP, LLC, an Illinois Limited Liability Company,

Plaintiffs,

- against -

LGP REALTY HOLDINGS, LP, a Delaware Limited Partnership, as successor by assignment from PT, LLC, BAPA, LLC and State Oil Company and LEHIGH GAS WHOLESALE, LLC, a Delaware Limited Liability Company,

Defendants.

Index No.: 1:17-cv-06135
Honorable Sharon Johnson Coleman

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LGP REALTY HOLDINGS LP, LEHIGH GAS WHOLESALE LLC, LEHIGH GAS WHOLESALE SERVICES, INC. AND CROSSAMERICA PARTNERS LP,

Third-Party Plaintiffs,

- against -

CATCH 26, LLC, GAS CAP FUELS, LLC, GRAYSLAKE STOP & SHOP, LLC, LOUAY ALANI and ALI ALANI,

Third-Party Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DEFENDANTS' MOTION FOR SO-ORDERED SETTLEMENT AGREEMENT AND 150-DAY CONDITIONAL ORDER OF SETTLEMENT**

Defendants LGP Realty Holdings, LP, as successor by assignment from PT, LLC, BAPA, LLC and State Oil Company and Lehigh Gas Wholesale, LLC, and Third-Party Plaintiffs LGP

Realty Holdings LP, Lehigh Gas Wholesale LLC, Lehigh Gas Wholesale Services, Inc. and CrossAmerica Partners LP (collectively "Lehigh"), by and through their attorneys, Sorling Northrup and Harriton & Furrer, LLP, hereby move this Honorable Court to So-Order the annexed executed Settlement Agreement and issue a 150-day Conditional Order of Settlement, in support of which they state as follows:

1. On January 31, 2019, after months of settlement negotiations, the parties duly executed a Settlement Agreement which is annexed hereto as Exhibit "**A**." The parties have agreed to resolve this matter in accordance with the terms of the attached Settlement Agreement.

2. Accordingly, Defendants respectfully request that this Honorable Court "So-Order" the annexed Settlement Agreement so that the parties may discontinue this matter subject to each party's compliance with the terms and conditions of the Settlement Agreement.

3. Specifically, the dismissal of the litigation with prejudice will be conditioned on the later of: (a) the Ingleside Closing; (b) the Woodstock Closing; or (c) Plaintiffs leaving the three (3) Properties as a result of Plaintiffs' breach of any provision of the Settlement Agreement.

4. Pursuant to Paragraphs 1, 2, 7 and 8 of the Settlement Agreement, it is expected that Plaintiffs will complete the purchase of the Ingleside and Woodstock Properties within 150 days.

5. As such, Defendants respectfully request that this Honorable Court issue a 150-day Conditional Order of Settlement.

6. Defendants' counsel has conferred with Plaintiffs' counsel who consents to this request.

Dated: Springfield, Illinois
February 4, 2019

Respectfully submitted,

/s/ David A. Rolf  
**DAVID A. ROLF, ESQ.**  
**SORLING NORTHRUP ATTORNEYS**  
Attorneys for Defendants and  
Third-Party Plaintiffs  
1 North Old State Capital Plaza, Suite 200  
P.O. Box 5131  
Springfield, Illinois 62705  
(217) 544-1144  
darolf@sorlinglaw.com  
Illinois ARDC Co. 6196030  

/s/ Urs Broderick Furrer  
**URS BRODERICK FURRER, ESQ.**  
**HARRITON & FURRER, LLP**  
Attorneys for Defendants and  
Third-Party Plaintiffs  
84 Business Park Drive, Suite 302  
Armonk, New York 10504  
(914) 730-3400  
UBFurrer@hflawllp.com  
*Admitted pro hac vice*

**TO:** **TIMOTHY C. CULBERTSON, ESQ.**
Attorney for Plaintiffs and Third-Party Defendants
P.O. Box 677
Cary, IL 60013
(847) 913-5945
Illinois ARDC No. 6229083

**WILLIAM S. BAZIANOS, ESQ.**
**ROESER BUCHEIT & GRAHAM, LLC**
Attorneys for Plaintiffs and Third-Party Defendants
Two North Riverside Plaza, Suite 1420
Chicago, IL 60606
(312) 300-2520

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Timothy C. Culbertson
2707 Three Oaks Road, No. 677
Cary, Illinois 60021
(847) 913-5945
ARDC No. 6229083

Mr. William S. Bazianos, Esq.
Roeser Bucheit & Graham, LLC
Two North Riverside Plaza, Suite 1420
Chicago, IL 60606
(312) 300-2520
*Attorneys for Plaintiffs and Third-Party Defendants*

/s/ Urs Broderick Furrer
**URS BRODERICK FURRER, ESQ.**
**HARRITON & FURRER, LLP**
Attorneys for Defendants and
Third-Party Plaintiffs
84 Business Park Drive, Suite 302
Armonk, New York 10504
(914) 730-3400
UBFurrer@hflawllp.com
*Admitted pro hac vice*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

CATCH 26, LLC, an Illinois Limited Liability Company, GAS CAP FUELS, LLC, an Illinois Limited Liability Company and GRAYSLAKE STOP & SHOP, LLC, an Illinois Limited Liability Company,

Plaintiffs,

- against -

LGP REALTY HOLDINGS, LP, a Delaware Limited Partnership, as successor by assignment from PT, LLC, BAPA, LLC and State Oil Company and LEHIGH GAS WHOLESALE, LLC, a Delaware Limited Liability Company,

Defendants.

Index No.: 1:17-cv-06135

---

LGP REALTY HOLDINGS LP, LEHIGH GAS WHOLESALE LLC, LEHIGH GAS WHOLESALE SERVICES, INC. AND CROSSAMERICA PARTNERS LP,

Third-Party Plaintiffs,

- against -

CATCH 26, LLC, GAS CAP FUELS, LLC, GRAYSLAKE STOP & SHOP, LLC, LOUAY ALANI and ALI ALANI,

Third-Party Defendants.

---

**SO-ORDERED SETTLEMENT AGREEMENT**

***WHEREAS***, Plaintiffs Catch 26, LLC, Gas Cap Fuels, LLC, and Grayslake Stop & Shop, LLC, have brought this action alleging claims against LGP Realty Holdings, LP, as successor by assignment from PT, LLC, BAPA, LLC and State Oil Company and Lehigh Gas Wholesale, LLC sounding in violations of the Petroleum Marketing Practices Act, 15 U.S.C. 2810, et seq., and breach of contract, relating to: (1) the properties located at 26025 and 26037 West Grand Avenue, Ingleside, Illinois 60041 (collectively, "Ingleside Property"); (2) the property located at 735 Belvidere Road, Grayslake, Illinois 60030 ("Grayslake Property"); and (3) the property located at 401 S. Eastwood, Woodstock, Illinois

60098 ("Woodstock Property"); and

***WHEREAS***, Defendants denied all of Plaintiffs' material allegations and asserted counterclaims against the Plaintiffs sounding in breach of contract, trademark violations, trespass, and eviction and ejectment, and sought declaratory judgment and injunctive against the Plaintiffs; and

***WHEREAS***, Defendants asserted third-party claims against the Third-Party Defendants sounding in breach of personal guaranties; and

***WHEREAS***, all of the Parties' claims and counterclaims above, are, collectively, "the Litigation" and the Plaintiffs and Third-Party Defendants are, collectively, "the Plaintiffs," and the Defendants/Third-Party Plaintiffs are, collectively, "the Defendants"; and

***WHEREAS***, the Parties desire to settle this matter on the terms set forth below, with the understanding the settlement of this dispute shall not be taken or construed to be an admission or concession of liability or wrongdoing on the part of any party, and all parties expressly deny any liability or wrongdoing;

***NOW THEREFORE***, Plaintiffs, Defendants/Third-Party Plaintiffs and the Third-Party Defendants (collectively "the Parties"), agree as follows:

1. Plaintiffs will pay off the balance of the April 12, 2013, Installment Agreements relating to the Ingleside Property on or before the Ingleside Closing Date, which Closing will be held within ninety (90) days of the date hereof ("the Ingleside Closing Date").[1] At the Ingleside Closing, the parties shall: (a) execute any and all documents necessary to transfer the registration of any Underground Storage Tank ("UST") at the Ingleside Property to Plaintiffs; and (b) execute a Bill of Sale and Release for the Ingleside USTs[2]. At the time of the Ingleside Closing, Defendants shall transfer, convey, assign and deliver to Plaintiffs good, marketable and insurable title to the Ingleside Property, free and clear of all encumbrances, except for the Permitted Encumbrances, being those items deemed to be acceptable to Plaintiffs. If,

---

[1] If Plaintiffs are unable to Purchase the Woodstock Property by the Ingleside Closing Date, Plaintiffs may extend the Ingleside Closing Date for thirty (30) days on the following grounds: (a) the extension must be made in writing; (b) the extension may be for no more than thirty (30) days; and (c) must be accompanied by a non-refundable wire-transfer or ACH payment to Defendants in the amount of $7,500.00, which payment(s) shall be applied to the Ingleside purchase price. See footnote 7 for an example.

[2] A copy of the Ingleside Bill of Sale and Release is annexed hereto as Exhibit "A."

between the date of execution hereof and the Ingleside Closing Date, Plaintiffs choose not to proceed with the purchase of the Ingleside Property, Plaintiffs may cancel the Installment Agreements on written notice to Defendants. Within ten days of such written notice, Defendants may direct the Escrow Agent to release the Ingleside Mutual Termination Agreement and Plaintiffs shall vacate the Ingleside Property within ten days. Upon Plaintiffs leaving the Ingleside Property, Defendants shall return the Ingleside Installment Payments ("Ingleside Down Payments") made under the Installment Agreements and Promissory Notes within five (5) business days of Plaintiffs' notice to Defendants hereunder, along with original copies of the Installment Agreement Documents marked "CANCELLED." If Plaintiffs do not provide such written notice of their objections to any such matters, Plaintiffs: (a) shall proceed with the purchase of the Ingleside Property; and (b) shall be deemed to have waived their objection to any such matters and such matters, together with all other liens, encumbrances and restrictions of record, shall be deemed to be Permitted Encumbrances.[3]

2. Plaintiffs will purchase the Woodstock Property for $500,000.00 on or before the Woodstock Closing Date, which Closing will be held within ninety (90) days of the date hereof unless extended pursuant to paragraph 8 below. Simultaneous with the execution of this Settlement Agreement, the Parties shall enter into a Purchase and Sale Agreement for the Woodstock Property.[4] At the Woodstock Closing, Plaintiffs shall: (1) execute any and all documents necessary to transfer the registration of any USTs at the Woodstock Property to Plaintiffs; and (2) execute a Bill of Sale and Release for the Woodstock USTs[5].

3. Subject to the provisions of paragraphs 9, 10 and 11 below, Plaintiffs shall continue to lease the Grayslake Property pursuant to the terms and conditions of the Grayslake Lease dated October 22,

---

3 At the time of the Ingleside Closing, the parties shall execute those documents necessary to effectuate the closing including, but not limited to: (a) a general assignment of contracts, permits and other rights as contemplated herein; (b) owner's title insurance affidavit and affidavit of non-foreign status of Defendants conforming to the requirements of United States Treasury Regulations; (b) such other affidavits as may be reasonably required by Plaintiffs' title insurance company; (c) settlement statement; (d) certificates of incumbency and evidence of corporate authority for the execution and delivery of all documents required in such form and content as the title insurance company reasonably may require (including an officer's certificate); (e) certificates as to Defendants' good standing; (f) all additional documents, certifications, and affidavits that may be reasonably necessary or appropriate to complete the purchase and sale of the Ingleside Property as may be reasonably requested by the title insurance company and Plaintiff's lender; and (g) any documents required to be prepared and filed by Defendants to effectuate the transfer of the UST registrations and any assigned permits applicable to the Ingleside Property.

4 A copy of the Woodstock Purchase and Sale Agreement is annexed hereto and made a part hereof as Exhibit "B."

5 A copy of the Woodstock Bill of Sale and Release is annexed hereto as Exhibit "C."

2014 ("Grayslake Lease") until October 31, 2020, ("Grayslake Lease Termination Date").

4. Plaintiffs will reconnect, at Defendants expense, if any, the credit card system necessary for Defendants to receive all Plaintiffs' credit card settlements at the Grayslake Property at the time of execution of this Settlement Agreement.

5. Plaintiffs will, in accordance with the terms of the relevant supply agreements, purchase all petroleum products from the Defendants from the date hereof until: (a) at the Ingleside Property, the earlier of: (i) Plaintiffs' purchase of the Ingleside Property as set forth in Paragraph 1 above; or (ii) Plaintiffs vacating the Ingleside Property pursuant to Paragraphs 7, 10, or 11 below; and (b) at the Grayslake Property, the earlier of: (i) Plaintiffs' vacating the Grayslake Property pursuant to Paragraphs 9, 10, or 11 below; or (ii) the Grayslake Lease Termination Date. Payments for all such petroleum product purchases shall be made via the normal drafting process and all payments shall be due within five days of Plaintiffs' purchase of the product unless agreed otherwise. Until such time as the credit cards systems are reconnected and all credit card sales are flowing through the Defendants' bank account, all purchases shall be on a prepay basis. Notwithstanding the foregoing, nothing in this Settlement Agreement obligates Plaintiffs to purchase petroleum products from Defendants at the Woodstock Property during such time as the Mutual Termination Agreement is held in escrow.

6. Plaintiffs will execute a Mutual Termination Agreement for the Ingleside Property, which Mutual Termination Agreement shall be held in escrow pending the Ingleside Closing. Following the Ingleside Closing, the Ingleside Mutual Termination Agreement shall be returned to Plaintiffs' counsel. Plaintiffs shall, contemporaneously with the execution of this Settlement Agreement, execute a Mutual Termination Agreement for the Woodstock Property, which Mutual Termination Agreements shall be held in escrow pending the Woodstock Closing. Following the Woodstock Closing, the Woodstock Mutual Termination Agreement shall be returned to Plaintiffs' counsel. Plaintiffs shall, contemporaneously with the execution of this Settlement Agreement, execute a Mutual Termination Agreement for the Grayslake Property, which Mutual Termination Agreement shall be held in escrow pending the Grayslake Lease Termination Date. Following the Grayslake Lease Termination Date, the Grayslake Termination

Agreement shall be returned to Plaintiffs' counsel.[6]

7. If Plaintiffs are unable to Purchase the Ingleside Property by the Ingleside Closing Date, Defendants may direct the Escrow Agent to release the Ingleside Mutual Termination Agreement and Plaintiffs shall vacate the Ingleside Property within ten days.[7] If Plaintiffs vacate the Ingleside Property within ten days of the release of the Ingleside Mutual Termination Agreement, Defendants shall promptly return all of Plaintiffs' Ingleside Down Payments made on the Ingleside Property from the date of the Installation Agreement through the Ingleside Closing Date. If Plaintiffs fail to vacate the Ingleside Property within ten days, Defendants may retain the Ingleside Down Payments.

8. If Plaintiffs are unable to Purchase the Woodstock Property by the Ingleside Closing Date, Defendants Plaintiffs may extend the Woodstock Closing Date up to two consecutive times on the following grounds: (a) each extension must be made in writing; (b) each extension may be for no more than thirty (30) days; and (c) each extension must be accompanied by a non-refundable wire-transfer or ACH payment to Defendants in the amount of $7,500.00, which payment(s) shall be applied to the Woodstock purchase price.[8]

9. If, at the end of the second extension of the Woodstock Closing Date, Plaintiffs are unable to Purchase the Woodstock Property, Defendants may direct the Escrow Agent to release the Woodstock Mutual Termination Agreement and Plaintiffs shall vacate the Woodstock Property within ten days. Upon Plaintiffs' failure to purchase the Woodstock Property, the Grayslake Lease shall terminate.

10. It will be considered a breach of this Settlement Agreement if: (1) Plaintiffs disconnect, the credit card system necessary for Defendants to receive all Plaintiffs' credit card settlements at the Ingleside Property and purchase all petroleum products from Defendants at the Ingleside Property from the date

---

6 The Ingleside, Grayslake and Woodstock Mutual Termination Agreements, which will be held in escrow by Defendants' counsel, as Escrow Agent, are annexed as Exhibit "D."

7 This provision shall not apply to any inability of Plaintiffs to close on the Ingleside Property due to a failure by Defendants to provide title free and clear of all liens and encumbrances (such as mortgages and monetary liens created by Seller in favor of a lender), except for: (a) easements, restrictions and conditions of record as of the date of this Agreement or to be created pursuant to this Agreement; (b) easements or restrictions visible upon inspection of the Property; and (c) any state of facts which an accurate survey would disclose.

8 As an example, if Plaintiffs seek one or more thirty (30) day extension, each such request shall be accompanied by a $7,500.00 payment to Defendants in accordance with the provisions of this paragraph. If Defendants thereafter fails to complete the purchase of the Woodstock Property, Plaintiffs will forfeit each such $7,500.00 payment. If, however, after requesting one or more thirty (30) day extensions and thereafter purchase the Woodstock Property, each such $7,500.00 payment will be applied to the Woodstock purchase price as if such payments were deposits.

hereof until the Ingleside Closing; or (2) Plaintiffs fail to reconnect (and maintain such connection of) all credit card systems necessary for Defendants to receive all Plaintiffs' credit card settlements at the Grayslake Property and purchase all petroleum products from Defendants at the Grayslake Property from the date hereof until the Grayslake Lease Termination Date or (iii) if Plaintiffs fails to comply with the Court's September 21, 2018, Order pertaining to the monitoring systems at the Grayslake and Woodstock Properties. Upon the occurrence of such a breach of this Settlement Agreement at any one of the Properties, the Ingleside, Woodstock and Grayslake Lease shall terminate and Defendants may direct the Escrow Agent to release the Ingleside, Grayslake and Woodstock Mutual Termination Agreements from Escrow and Plaintiffs shall, on three days' written notice: (1) immediately vacate all three Properties; (2) forfeit their right to purchase the Ingleside and Woodstock Properties; and (3) forfeit their right to the Ingleside Down Payments.

11. Plaintiffs' rescission of the Ingleside Mutual Termination Agreement shall also will be considered Plaintiffs' Breach of this Settlement Agreement. Upon the occurrence of such a Breach of this Settlement agreement, the Grayslake and Woodstock Leases shall terminate, Defendants may direct the Escrow Agent to release the Woodstock and Grayslake Mutual Termination Agreements from Escrow and Plaintiffs shall, on three days' written notice: (1) immediately vacate the Grayslake and Woodstock Properties; (2) forfeit their right to purchase the Ingleside and Woodstock Properties; (3) forfeit their right to the Ingleside Down Payments; and (4) pay the Breach Fee defined in Paragraph 12.

12. In the event of a Breach of this Settlement Agreement by any party, the non-breaching party shall be entitled to recover all attorneys' fees incurred in connection with the Litigation ("the Breach Fee"). The provisions of this Section relating to the Breach Fee are an integral part of the transactions contemplated by this Settlement Agreement, that the damages resulting from the breach of this Agreement are uncertain and incapable of accurate calculation and that the amount payable hereunder is a reasonable forecast of the actual damage that either party would incur in the event of a Breach of this Settlement Agreement. The Breach Fee is intended to and shall constitute liquidated damages, and shall not be a penalty.

13. The parties executing this Settlement Agreement will withdraw their respective claims alleged in this matter and agree to the dismissal of the Litigation with prejudice upon the later of: (a) the Ingleside Closing; (b) the Woodstock Closing; (c) Plaintiffs leaving the three Properties as a result of Plaintiffs' breach of any provision of this Settlement Agreement.

14. That the Court will retain jurisdiction of the Litigation for purposes of enforcement of this Settlement Agreement.

15. Except as otherwise agreed to herein, each of the Parties shall bear its own attorneys' fees, costs and other expenses incurred in connection with the Litigation.

16. This Settlement Agreement cannot be amended, supplemented, or modified, and no provision may be waived, except by a written instrument executed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.

17. The Parties acknowledge that none of the Parties shall be entitled to have any provision of the Settlement Agreement construed against the other. Rather, the provisions of this Settlement Agreement shall be interpreted in a reasonable manner to effectuate the purposes of the Parties and this Settlement Agreement.

18. In entering into the settlement that has caused the Parties to execute this Settlement Agreement, the Parties specifically acknowledge and represent that: (i) each Party is represented by counsel and has had an opportunity to review this Settlement Agreement before execution of it; (ii) the Parties have relied upon the advice of their respective attorneys, who are attorneys of the Parties' own choice, concerning the legal consequences of the settlement and of the execution of this Settlement Agreement; (iii) the terms of the settlement and this Settlement Agreement have been completely explained to the Parties by the Parties' respective attorneys; (iv) the Parties have entered into the settlement and have signed this Settlement Agreement voluntarily, without being under any mental disability and without any undue influence from anyone; and (v) the Parties fully understand and agree to perform and abide by all of the terms of the settlement and of this Settlement Agreement.

19. This settlement that has caused the parties to execute this Settlement Agreement, and this Settlement Agreement and all portions contained therein, shall be construed and interpreted in

accordance with the laws of the State of Illinois, notwithstanding any choice of law rules.

***NOW THEREFORE, IT IS HEREBY ORDERED*** that the parties shall comply with the terms of this Settlement Agreement.

Dated: Chicago, Illinois
January 31 2019

CATCH 26, LLC
By:

GAS CAP FUELS, LLC
By:

[illegible] YSLAKE STOP & SHOP, LLC
By:

LOUAY ALANI

ALI ALANI

LGP REALTY HOLDINGS, LP – By LGP Realty Holdings GP LLC, its general partner
By: George Wilkins

LEHIGH GAS WHOLESALE LLC
By: George Wilkins

LEHIGH GAS WHOLESALE SERVICES INC.
By: George Wilkins

CROSSAMERICA PARTNERS LP
By: CrossAmerica GP LLC its general partner By George Wilkins

DAVID A. ROLF, ESQ.
SORLING NORTHRUP ATTORNEYS
Attorneys for Defendants
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, Illinois 62705
(217) 544-1144
darolf@sorlinglaw.com
Illinois ARDC Co. 6198030

URS BRODERICK FURRER, ESQ.
HARRITON & FURRER, LLP
Attorneys for Defendants
84 Business Park Drive, Suite 302
Armonk, New York 10504
(914) 730-3400
UBFurrer@hflawllp.com
*Admitted pro hac vice*

**TIMOTHY C. CULBERTSON, ESQ.**
Attorney for Plaintiffs and
Third-Party Defendants
P.O. Box 677
Cary, IL 60013
(847) 913-5945
tcculb@gmail.com
Illinois ARDC No. 6229083

***SO ORDERED:***

*Honorable Sharon Johnson Coleman, U.S.D.J.*